A98A2468, A98A2469. AMERICAN MEDICAL TRANSPORT
GROUP, INC. et al. v. GLO-AN, INC.; and vice versa.
(509 SE2d 738)

ELDRIDGE, Judge.

American Medical Transport Group, Inc. ("AMTG"), defendant-appellant, leased from Glo-An, Inc. two suites of offices in Roswell, Georgia. Elizabeth R. Payne was AMTG's president. Lease 203 and Lease 204 designated "MedWings," AMTG's servicemark, as tenant. The two leases were for different units but were identical as to terms, i.e., rental, utility charges, common area maintenance charges, and other terms and conditions of the leases. The terms of both leases ran from April 1, 1995, through March 31, 1997; both specified what constituted default; and both specified Glo-An's remedies in case of default.

In January 1996, AMTG was delinquent in its rental payments by several months. Ten months of the twenty-four-month rental period had elapsed. Glo-An informed AMTG that eviction proceedings would be commenced. On February 6, 1996, AMTG vacated both suites. Glo-An did not commence eviction proceedings, but placed a "For Lease" sign on the premises in mid-January 1996.

The leases provided specific remedies to Glo-An in the event of default by AMTG. The leases provided that default occurred if: "(a) [t]enant shall fail to pay any installment of the rent . . . when due, and such failure shall continue for a period of five (5) days from the date such installment was due; . . . [or] (f) [t]enant shall desert or vacate any substantial portion of the premises." The leases provided

as remedies in case of default: "A. Terminate this lease in which event Tenant shall immediately surrender the Premises to Landlord, and if Tenant fails to do so, Landlord may, without prejudice to any other remedy which it may have for possession or arrears in rent, enter upon and take possession of the Premises or any part thereof, by force if necessary, without being liable for prosecution or any claim of damages thereof; and Tenant agrees to pay to Landlord on demand the amount of all loss or damage which Landlord may suffer by reason of such termination, whether through inability to relet the Premises on satisfactory terms or otherwise." The leases provided that AMTG would pay the rent "without deduction or set off, for the entire term hereof for said premises."

On March 7, 1996, Glo-An filed its complaint against AMTG, declaring the leases terminated. Glo-An sought attorney fees alternatively under OCGA §§ 13-6-11 and 13-1-11, but elected to proceed under OCGA § 13-6-11. On April 8, 1996, Suite 203 was relet to a new tenant. Suite 204 remained un-rented as of March 31, 1997.

The complaint sought rent and late charges of $9,660.27 for both units for January, February, and March 1996. The complaint gave notice of the intent to collect attorney fees for past due rent and utility bills of $9,562.09. It also sought 12 months rent for Lease 204 from April 1, 1996, through March 31, 1997, totaling $15,633.

On April 18, 1997, Glo-An filed its motion for summary judgment. AMTG responded. Defendants also filed its motion for summary judgment, seeking to hold Payne, its president, solely liable for past due rents and utilities. On October 8, 1997, the trial court denied defendants' motion, granted Glo-An's motion for summary judgment against AMTG, and dismissed Payne without prejudice. Defendants appeal.

### Case No. A98A2468

1. AMTG's first enumeration of error is that the trial court erred in granting summary judgment to Glo-An against AMTG for $25,871.10. We do not agree.

AMTG does not deny liability in some amount; it challenges only the award for rent accruing after the premises were abandoned.

"Absent a limiting statute or controlling public policy, parties may contract with one another on whatever terms they wish and the written contract defines the full extent of their rights and duties. . . . We are unaware of any statutory or public policy limiting a lessee's right to enter into a lease in which both parties agree that the lessee shall be liable for rent for the entire term, less that amount received if the premises are re-let." (Citations and punctuation omitted.) *Hardin v. Macon Mall*, 169 Ga. App. 793, 794 (1) (315 SE2d 4) (1984). See

*Bentley-Kessinger, Inc. v. Jones*, 186 Ga. App. 466, 467-468 (367 SE2d 317) (1988); see also *Mullis v. Shaheen*, 217 Ga. App. 277, 278 (1) (456 SE2d 764) (1995).

The leases clearly provided that the rent was payable "without deduction or set off, for the entire term hereof for the premises," and "[t]enant agrees to pay to [l]andlord on demand the amount of all loss and damage which [l]andlord may suffer by reason of such termination, whether through inability to relet the [p]remises on satisfactory terms or otherwise." Such "explicit and detailed provision in the lease[s] which clearly and unequivocally expressed the parties' intention to hold the lessee responsible for after-accrued rent even should an eviction take place." *Bentley-Kessinger, Inc. v. Jones*, supra at 468; see also *Rucker v. Wynn*, 212 Ga. App. 69, 71-72 (4) (441 SE2d 417) (1994); *Peterson v. P. C. Towers, L.P.*, 206 Ga. App. 591, 592 (2) (426 SE2d 243) (1992). Therefore, the trial court did not err as a matter of law in granting summary judgment in the award of $25,871.10, when there existed no disputed issue of material facts as to the award of such liquidated damages.

2. AMTG's second enumeration of error is that the trial court erred in granting summary judgment for Glo-An against AMTG for interest in the amount of $2,167.67. We do not agree.

Under OCGA § 7-4-2 (a), AMTG is liable for pre-judgment interest on the full amount of the principal awarded for past due rents and late charges at seven percent per annum as of April 14, 1997, totaling $2,095.54, with additional post-judgment interest accruing at the rate of $4.85 per day. Since AMTG neither counterclaimed for nor pled a set-off as an affirmative defense, then such was waived. Thus, there was no error in the trial court's failure to provide for a set-off for lease deposits prior to calculating the interest. See also Division 4, infra.

3. AMTG's third enumeration of error is that the trial court erred in granting summary judgment in favor of Glo-An against AMTG for attorney fees in the amount of $3,207.25. We agree.

In the Glo-An brief in Case No. A98A2469, Glo-An states, "[a]s evidenced by the amount it seeks to recover, Glo-An elected to seek attorneys' fees and litigation expenses pursuant to OCGA § 13-6-11 rather than § 13-1-11."

Under OCGA § 13-6-11, the amount of the award of attorney fees as damages is a jury question that cannot be decided on summary judgment, because the questions of reasonableness and necessity of the expenses of litigation and attorney fees are matters for expert opinion. Opinion testimony, whether accepted in whole or in part, is a matter of weight and credibility for the jury. *Allen v. Harris*, 113 Ga. 107, 108-109 (4) (38 SE 322) (1901); *Altamaha Convalescent*

*Center v. Godwin*, 137 Ga. App. 394, 397-399 (3) (224 SE2d 76) (1976).

"[Q]uestions concerning bad faith, stubborn litigiousness, and unnecessary trouble and expense, under OCGA § 13-6-11, are generally questions for the jury to decide. [Cits.]" *Backus Cadillac-Pontiac v. Ernest*, 195 Ga. App. 579, 581 (394 SE2d 367) (1990); see also *Jim Anderson & Co. v. Partraining Corp.*, 216 Ga. App. 344, 346 (3) (454 SE2d 210) (1995); *Rossee Oil Co. v. BellSouth Telecommunications*, 212 Ga. App. 235, 236 (441 SE2d 464) (1994).

"We are in agreement . . . with the trial court insofar as it required evidence of the actual costs of the attorney and the reasonableness of those costs. . . . The intent of the law, as shown by the words, 'the jury may allow them,' is to leave the matter of expenses to the jury trying the case. The plaintiff, by merely paying a given amount to his attorney, could not bind the defendants for this amount unless there were some evidence that the amount so paid was reasonable, and unless it was found so to be by the jury trying the case." (Citations and punctuation omitted.) *Brannon Enterprises v. Deaton*, 159 Ga. App. 685, 686-687 (285 SE2d 58) (1981); see also *J. M. Clayton Co. v. Martin*, 177 Ga. App. 228, 232 (6) (339 SE2d 280) (1985).

Even at the close of all the evidence which would support the jury's award or denial of expenses of litigation or at a post-judgment motion, it is not error for the trial court to deny the direction of a verdict or motion for judgment notwithstanding the verdict on such issue. *Powell v. Watson*, 190 Ga. App. 375 (378 SE2d 867) (1989); *Assaf v. Coker*, 157 Ga. App. 432, 434 (5) (278 SE2d 82) (1981). Only in the rare case where there was absolutely no evidence to support the award of expenses of litigation would the trial court be authorized to grant summary adjudication on such issues. See *LaRoche Indus. v. AIG Risk Mgmt.*, 959 F2d 189 (11th Cir. 1992). Summary judgment as to the issue of liability for expenses of litigation damages and the amount of damages in recovery for the reasonable expenses of litigation are for jury determination. Thus, the trial court erred as a matter of law in granting summary judgment on such issues.

4. AMTG's fourth enumeration of error is that the trial court erred in failing to give AMTG credit for the deposits under the leases of $1,620 and $1,302.75. We do not agree.

Under OCGA § 9-11-13 (a), AMTG failed to file a compulsory counterclaim for the set-off of the rent deposits as a type of counterclaim. See *Swim Dixie Pool Corp. v. Kraemer*, 157 Ga. App. 748, 749 (1) (278 SE2d 448) (1981); *Gwinnett Commercial Bank v. Flake*, 151 Ga. App. 578, 580 (1) (260 SE2d 523) (1979). Failure to timely file a compulsory counterclaim results in the claim being barred. *Aycock v.*

*Calk*, 228 Ga. App. 172, 174-175 (491 SE2d 383) (1997); *P & J Truck Lines v. Canal Ins. Co.*, 148 Ga. App. 3, 4-5 (251 SE2d 72) (1978). See also Division 2, supra.

Therefore, the trial court did not err in failing to subtract the rent deposits from the award as a set-off.

5. AMTG's fifth enumeration of error is that the trial court erred in dismissing Elizabeth R. Payne as a defendant, without prejudice, because Glo-An elected to proceed against her principal, AMTG. We agree.

In its brief, Glo-An states that it "agrees that it has thereby made an election to collect from the principal — AMTG — rather than from Payne — the agent." "The contract liability of a principal and his agent is not joint, and after election to proceed against one, the other cannot be held. [Cit.]" *Kingsberry Homes v. Findley*, 242 Ga. 362, 365 (2) (249 SE2d 51) (1978). Therefore, the trial court erred in not dismissing Payne with prejudice.

### Case No. A98A2469

All of Glo-An's enumerations of error go to issues involving the grant of summary judgment as to expenses of litigation under OCGA § 13-6-11. In Division 3 in Case No. A98A2468, we held that OCGA § 13-6-11 mandates that, generally, a jury determines (1) whether the award of expenses of litigation is appropriate under the facts and circumstances of a particular case, and (2) the specific amount of damages that are recoverable. Thus, the grant of summary judgment as to such damage issues was not appropriate under the facts and circumstances of this case and is reversed in part. Therefore, the enumerations of error raised by Glo-An are not reached in this cross-appeal.

*Judgment affirmed in part and reversed in part. McMurray, P. J., and Blackburn, J., concur.*

DECIDED NOVEMBER 24, 1998.

*Robert L. Kirby*, for appellants.

*Wagner, Johnston & Rosenthal, Kristofer R. Schleicher, Jenny E. Jensen*, for appellee.