## A02A2342. NOBLES v. JIFFY MARKET FOOD STORE CORPORATION et al.

(579 SE2d 63)

PHIPPS, Judge.

Landlord Marcus H. Nobles, Jr. sued tenants the Jiffy Market Food Store Corporation, Keith Strickland, and Gladys Strickland (collectively Jiffy Market) for breach of several lease agreements. Among the damages Nobles sought were future lease payments under an acceleration clause in one of the agreements. The trial court granted in part Jiffy Market's motion for summary judgment, ruling that the acceleration clause was invalid. The court also denied Nobles's motion for partial summary judgment. Nobles appeals both rulings. Finding no error, we affirm.

The record shows that in September 1995, Jiffy Market acquired from Nobles the franchise rights to a Huddle House restaurant in Richmond Hill. As part of the transaction, Nobles leased Jiffy Market the restaurant premises for a period of 22 years. The lease required Jiffy Market to make graduated monthly payments, repair the premises, pay applicable taxes, and maintain insurance. In addition to the premises lease, the parties also entered into separate agreements for the lease of restaurant equipment and exterior signs.

The parties later amended the premises lease twice to decrease the monthly lease payments and to reflect Jiffy Market's sublease of the premises to a third party. Both amendments ratified the original lease agreement.

Two paragraphs of the premises lease agreement addressed Nobles's remedies in the event of a default by Jiffy Market. Under Paragraph 27, if Jiffy Market defaulted on its obligations after written notice by Nobles, then Nobles

> at his option may at once, or within six (6) months thereafter (but only once during continuance of such default or condition[)], terminate this lease by written notice to [Jiffy Market]; whereupon this Lease shall end. . . . Upon such termination by [Nobles, Jiffy Market] will at once surrender possession of the premises to [Nobles]. . . . *In addition, [Nobles] may also collect, as damages, the remaining rent due or to become due under this Lease for the remainder of the term, less any amounts derived by [Nobles] from releasing the Premises.*[1]

---

[1] (Emphasis supplied.)

Paragraph 28, titled "Reletting by Lessor," provided that

> [Nobles], as [Jiffy Market's] agent, without terminating this Lease, upon [Jiffy Market's] breach of this Lease, in such a manner as to authorize termination as provided herein, may at [Nobles's] option enter upon and rent Premises at the best price obtainable by reasonable effort, without advertisement and by private negotiations and for any term [Nobles] deems proper. [Nobles] shall make reasonable efforts to relet the Premises. [Jiffy Market] shall be liable to [Nobles] for the deficiency, if any, between [Jiffy Market's] rent hereunder and the price obtained by [Nobles] on reletting.

In September 2000, the restaurant ceased operations. On October 10, Nobles sent Jiffy Market a letter demanding that month's lease payment and stating that if payment was not received by October 20, he would declare default and seek "all sums due under the Lease." No payment was made. On February 15, Jiffy Market returned the premises to Nobles. Nobles claims that much of the equipment was broken or missing and that the signs required repair.

Nobles sued Jiffy Market for all future payments under the remaining 18 years of the lease term, totaling $865,596. Nobles later relet the premises to another tenant, and he acknowledged that any recovery of future rents under his lease with Jiffy Market would be offset by payments received under the new lease. In addition to future rent, Nobles also sought damages from Jiffy Market for breach of the equipment and sign leases, repayment of the rent reductions allowed under the first lease amendment, and reimbursement of insurance and tax payments.

Nobles sought partial summary judgment, arguing that the record clearly showed that Jiffy Market had breached the lease agreements, entitling him to damages. Jiffy Market also moved for summary judgment, claiming that Paragraph 27 of the premises agreement providing for recovery of future rent was an unenforceable penalty clause and that Nobles terminated the lease when he sought recovery under that paragraph, thereby ending Jiffy Market's obligations. The trial court agreed that Paragraph 27 was unenforceable, but otherwise denied both motions.

We review the trial court's ruling de novo, considering the evidence and all reasonable conclusions and inferences drawn from it in the light most favorable to the nonmovant.[2]

1. Nobles first contends that the court erred in ruling that Paragraph 27 of the premises lease was an unenforceable penalty. We disagree.

---

[2] See *Sams v. Video Display Corp.*, 255 Ga. App. 478 (566 SE2d 28) (2002).

This case is controlled by *Peterson v. P. C. Towers, L.P.*,[3] in which we examined a commercial lease provision similar to Paragraph 27.[4] We noted that while a tenant generally is not responsible for rent accruing after the landlord resumes possession, the parties may contract otherwise, provided that the lease agreement contains "an explicit and detailed provision . . . which clearly and unequivocally expresse[s] the parties' intention to hold the [tenant] responsible for after-accrued rent."[5] Such "accelerated rent" provisions are enforceable as valid liquidated damages clauses if (1) the injury caused by breach of the lease is difficult or impossible to estimate accurately; (2) the parties intend to provide for damages rather than a penalty; and (3) the stipulated sum is a reasonable pre-estimate of the landlord's probable loss.[6] If these requirements are not met, then the accelerated rent provision "fails as a penalty."[7] Whether an accelerated rent provision is enforceable is a question of law for the court.[8]

In analyzing whether the accelerated rent provision in *Peterson* met the three requirements for a valid liquidated damages clause, we noted that

> [t]he measure of damages in an action seeking to recover in advance for the full remaining term of a breached lease is the difference between what the tenant would have had to pay in rent for the balance of the term, and the fair rental value of the premises for the balance of the term. [Cit.][9]

Because these figures would be difficult to estimate accurately, we concluded that the first requirement was satisfied. But the accelerated rent provision failed to calculate damages "based on the future rental value of the premises, and the likelihood of reletting."[10] Therefore, it provided the landlord "with payment potentially bearing no reasonable relation to actual damages,"[11] and we held that it was an unenforceable penalty.

Paragraph 27 of the agreement between Nobles and Jiffy Market suffers from the same deficiency. It contained no "assessment of

---

[3] 206 Ga. App. 591 (426 SE2d 243) (1992).

[4] The agreement in *Peterson* provided that if the lease was terminated due to the tenant's default, the landlord could " 'declare the entire amount of the rent which would become due and payable during the remainder of the term of this lease to be due and payable immediately,' " with reduction to present cash value and offset by any rent the landlord received from reletting the premises. 206 Ga. App. at 592 (2).

[5] (Citations and punctuation omitted.) Id. at 591-592.

[6] Id. at 593 (3).

[7] Id. at 592.

[8] Id. at 592-593.

[9] Id. at 593.

[10] Id. at 594.

[11] Id.

future market conditions for the premises to account for future rental value, and the probability of reletting the premises for all or part of the remaining term."[12] This deficiency is especially acute in light of the length of the lease. Nobles attempted to collect approximately 18 years of unaccrued rent — almost 200 payments — at once. But neither the lease nor any evidence cited to this court attempted to determine whether these up-front payments would bear any reasonable relationship to Nobles's actual future damages, and it is difficult to infer such a relationship given the lengthy lease period. The damages Nobles sought were entirely too speculative and uncertain.

Moreover, Paragraph 27 did not provide that the future rent be reduced to present value[13] — another indication of a potentially large gulf between the sums authorized by that paragraph and the amount of Nobles's actual damages. Finally, the lease did not require that Nobles try to relet the premises in the event of Jiffy Market's default. Rather, reletting was solely "at [Nobles's] option."[14] Thus, the lease gave Nobles both present possession of the premises and all future rent. This, as we noted in *Jones v. Clark*,[15] "is manifestly unreasonable and oppressive."[16] For these reasons, the trial court correctly ruled that the accelerated rent clause in Paragraph 27 operated as an unenforceable penalty rather than a valid liquidated damages provision.

Nobles cites *American Med. Transport Group v. Glo-An, Inc.*,[17] *Rucker v. Wynn*,[18] and *Hardin v. Macon Mall*,[19] in which we enforced accelerated rent provisions in commercial leases as valid liquidated damages provisions. But these cases are distinguishable.

In *American Med. Transport*, the tenant defaulted on two leases with 24-month terms after ten months of the terms had elapsed.[20] After placing a "for lease" sign on the premises and reletting one of the suites, the landlord sought twelve months of unaccrued rent on one lease and one month on the other.[21] In *Rucker*, the tenant

---

[12] Id.

[13] After filing the complaint, Nobles reduced its asserted damages for future rent to present value, but we evaluate the validity of Paragraph 27 as it was written.

[14] After suing Jiffy Market for the full amount of all future rent, Nobles apparently did relet the premises, though for a shorter period of time and for less money than the Jiffy Market lease.

[15] 147 Ga. App. 657 (249 SE2d 619) (1978).

[16] Id. at 659 (2); see also *Carter v. Tokai Financial Svcs.*, 231 Ga. App. 755, 759 (2) (500 SE2d 638) (1998) (accelerated rent clause in personal property lease was unenforceable under *Peterson* because it allowed lessor, after lessee's default, to retain property yet collect all future rent payments).

[17] 235 Ga. App. 464 (509 SE2d 738) (1998).

[18] 212 Ga. App. 69 (441 SE2d 417) (1994).

[19] 169 Ga. App. 793 (315 SE2d 4) (1984).

[20] 235 Ga. App. at 464.

[21] Id. at 465.

defaulted on a five-year lease after six months had elapsed, and the landlord sought the difference between unaccrued rent for the remainder of the lease term and rent generated by reletting the premises.[22] In *Hardin*, the tenant defaulted after six years of a 15-year lease had elapsed, but after finding a new tenant, the landlord sought only two years of unaccrued rent under the lease's accelerated rent clause.[23] Because the landlords in these cases sought unaccrued rent only for relatively brief periods of time, it is far more likely that such rent represented a reasonable pre-estimate of the landlords' losses. These cases, therefore, did not involve the speculation and uncertainty inherent here, where Nobles wants unaccrued rent for the remarkable period of 18 years.

Nobles also cites *Ott v. Vineville Market*,[24] in which we upheld a landlord's charge of accelerated rent against a defaulting tenant, for the proposition that accelerated rent provisions are not liquidated damages provisions and thus cannot be rejected as unenforceable penalties. But *Ott* did not describe the lease provisions that authorized the charge of unaccrued rent, so its conclusion must be limited to its unspecified facts.[25] We follow our more recent decision in *Peterson*, which holds that an accelerated rent provision similar to the one here "either qualifies as an enforceable liquidated damages provision, or it fails as a penalty."[26]

2. Next, Nobles argues that even if Paragraph 27 did not entitle him to collect accelerated rent, Paragraph 28 did. Although the trial court did not address this argument, we will do so because it was presented below.

Paragraph 28 provided that if Nobles relet the premises without terminating the lease, Jiffy Market would be liable for any deficiency between the rent it owed under the lease and the price obtained by Nobles on reletting. Paragraph 27, on the other hand, allowed accelerated rent only if Nobles terminated the lease. Thus, either Nobles terminated the lease and Paragraph 27 applies, or he did not, and Paragraph 28 applies. Whether and when Nobles terminated the lease is a question of fact for the jury, and the trial court appropriately denied summary judgment on that issue.[27]

If Paragraph 28 applies, then we question whether it can be con-

---

[22] 212 Ga. App. at 69, 72 (4).

[23] 169 Ga. App. at 793.

[24] 203 Ga. App. 80, 81 (2) (416 SE2d 362) (1992).

[25] *Ott* also did not relate the term of the lease, when the tenant defaulted, or how much future rent the landlord sought. See id. at 80-81.

[26] 206 Ga. App. at 592.

[27] See *Buford-Clairmont v. Jacobs Pharmacy Co.*, 131 Ga. App. 643, 647 (1) (206 SE2d 674) (1974) (whether landlord's actions constituted termination of lease was question for jury).

strued to authorize up-front collection of future, unaccrued rent for the 18-year remainder of the lease term. If it can be so construed, then it, too, is an unenforceable penalty. Like Paragraph 27, it fails to satisfy the requirements for a valid liquidated damages provision because it provides no assessment of future market conditions regarding the rental value of the property and the possibility of reletting.

3. Finally, Nobles contends that the trial court erred in failing to grant him summary judgment on his claim for two other kinds of damages. Again, we disagree.

(a) First, Nobles argues that he is entitled to repayment of a reduction in rent that Jiffy Market received under the first amendment to the lease agreement. That amendment decreased Jiffy Market's monthly rent by $700. It also provided that if Jiffy Market "cease[d] to operate" a Huddle House restaurant on the premises before September 30, 2000, then it would have to repay Nobles $700 per month for each month that the reduction was in place. Because there was conflicting testimony whether the restaurant "operated" through September 30, summary judgment was not appropriate on this claim.

(b) Second, Nobles seeks repayment of certain taxes and insurance that he paid on the property, but that Jiffy Market should have paid under the premises lease. To support this claim, Nobles submitted his affidavit, which stated that he "paid $5,142.56 to Franklin Insurance Agency for property insurance and $3,002.00 to Travelers for flood insurance" for an unspecified period of coverage. The affidavit also stated that Nobles paid $2,440.53 in county taxes and $565.92 in local taxes on the property for the year 2000. Jiffy Market contends that Nobles terminated the lease, so it cannot collect any sums due thereunder. As noted, however, whether and when Nobles terminated the lease is a jury question. Whether the sums expended by Nobles fell within Jiffy Market's obligations under the lease also is a jury question. The trial court properly denied summary judgment on this claim.

*Judgment affirmed. Andrews, P. J., and Mikell, J., concur.*

DECIDED FEBRUARY 27, 2003.

*Ellis, Painter, Ratterree & Bart, Tracy A. O'Connell, Ansley B. Threlkeld*, for appellant.

*Whelchel, Brown, Readdick & Bumgartner, Gregory T. Carter*, for appellees.