## A03A0041. PADGETT v. TOAL.
### (581 SE2d 744)

SMITH, Chief Judge.

In this appeal, Jacqueline Padgett challenges the trial court's grant of summary judgment in favor of the Georgia Department of Community Health (DCH). DCH made Medicaid payments to providers for the treatment of injuries Padgett received, and it sought to recover those payments by enforcing a lien against a personal injury settlement award Padgett received from the Medical College of Georgia. Padgett contends it was error to permit recovery for various reasons. We find no merit in any of Padgett's contentions, and we affirm the judgment.

The record shows that Padgett was injured in June 1998 when she fell from a procedure table while at the Medical College of Georgia. Treatment for the injuries resulting from Padgett's fall was paid for under the Medicaid program, which is administered by DCH. Padgett filed suit under the Georgia Tort Claims Act against the Board of Regents of the University System of Georgia d/b/a the Medical College of Georgia to recover damages for her injuries, and the action was settled for $70,000 in August 2000. When DCH filed a departmental lien against the settlement proceeds to recover $21,936.44 it had expended in provider payments for Padgett's treatment, Padgett brought this declaratory judgment action against Russ Toal, in his official capacity as commissioner of DCH, seeking a declaration that DCH's lien was invalid for several reasons. DCH answered and filed a motion for summary judgment, and the trial court granted DCH's motion.

1. OCGA § 49-4-149 (a) provides that DCH "shall have a lien for the charges for medical care and treatment provided a medical assistance recipient upon any moneys or other property accruing to the recipient to whom such care was furnished . . . as a result of . . . injury . . . due to the liability of a third party, which necessitated the medical care." Relying upon this statute, Padgett contends that the trial court erred in enforcing a lien filed by the State of Georgia against its own monies. As best we understand Padgett's argument, she is claiming that the Board of Regents, the Medical College of Georgia, and DCH are all the same entity, i.e., the State of Georgia. But in the definitions portion of the Georgia Medical Assistance Act, OCGA §§ 49-4-141 through 49-4-157, the term "third party" is defined to mean "an individual, institution, corporation, or public or private agency, other than the department, that is legally liable to pay all or any part of the medical costs incurred by a recipient of medical assistance on account of any . . . injury . . . to such a recipient." OCGA § 49-4-141 (9). The term "department" is defined as DCH. OCGA § 49-4-141 (4). Since any State agency other than DCH is defined as a third party, and the Board of Regents and the Medical College of Georgia were liable for the injury to Padgett for which medical assistance payments were made, DCH was entitled to enforce its lien.

2. Padgett maintains that the State cannot recover monies it expended for her treatment because it failed to file a counterclaim in her action against the Board of Regents and the Medical College of Georgia. She argues that under OCGA § 49-4-147, the State was empowered to bring such a counterclaim, which was a compulsory counterclaim. Citing numerous cases involving failure to file compulsory counterclaims,[1] she asserts that because DCH's claim existed at the time the suit was filed but it never made the claim, it is now estopped to recover. We do not agree, for at least two reasons.

First, 42 USC § 1396p (a) (1), part of the federal medical assistance legislation, provides that when medical assistance is provided to an individual, "[n]o lien may be imposed against the property of any individual prior to his death on account of medical assistance paid or to be paid on his behalf under the State plan" with certain express exceptions, none of which apply here. Georgia law therefore could not authorize a counterclaim against Padgett for such recovery. But OCGA § 49-4-149 (a) expressly authorizes a lien against "moneys or other property accruing to the recipient" from third parties on

---

[1] See, e.g., *Willis v. Nat. Mtg. Co.*, 235 Ga. App. 544 (509 SE2d 403) (1998) (physical precedent only); *American Med. Transport Group v. Glo-An, Inc.*, 235 Ga. App. 464, 466 (2) (509 SE2d 738) (1998); *Birdsong v. Enforcer Products*, 235 Ga. App. 132, 133 (2) (508 SE2d 769) (1998).

account of the third parties' liability to the recipient that "necessitated the medical care" for which DCH provided payment. In this case, DCH was asserting a lien against the settlement proceeds Padgett received from a third party, the Medical College of Georgia, which was liable for injuries to Padgett for the treatment of which DCH made payments.

Second, no such counterclaim was necessary. Federal law requires states to obtain from recipients, at the time they apply for benefits and as a condition of eligibility, an assignment of rights to payment for medical care from third parties. 42 USC § 1396k (a) (1) (A). Georgia has enacted such an assignment provision. OCGA § 49-4-149 provides that a recipient who receives medical care for which DCH may be obligated to pay is deemed to have assigned to the department any right to payment for such care from any third party, up to the amount DCH actually paid. OCGA § 49-4-149 (d).[2] Because DCH paid for her medical treatment and Padgett assigned her right to DCH of any payments for medical care from third parties up to the amount DCH actually paid for that care, she cannot now challenge DCH's right to collect that assignment from the settlement she received, which included payment for her medical expenses.

3. Padgett contends that the trial court erred in not exempting from DCH's lien the 40 percent of the settlement proceeds she paid to her attorney. Relying upon *Holland v. State Farm &c. Ins. Co.*, 236 Ga. App. 832 (513 SE2d 48) (1999), and *Ramsey v. Sumner*, 211 Ga. App. 202 (438 SE2d 676) (1993), she argues that liens established under OCGA § 49-4-149 are subject to attorney liens. But those cases concerned the *priority* of liens; in both cases, the amount of the settlement was insufficient to satisfy both medical and attorney liens, and we held in both cases that the attorney lien had priority.

This situation is different. Here, no issue of priority is involved. The settlement is sufficient to satisfy both the DCH lien and Padgett's attorney fees. Padgett simply sought a ruling that DCH should reduce its lien amount by 40 percent, the proportion of the settlement Padgett had agreed to pay her attorney. But the trial court followed this court's holding in *Watts v. Promina Gwinnett Health System*, 242 Ga. App. 377 (530 SE2d 14) (2000). We held in *Watts* that such a proportional reduction was not required, as it "is well established that each litigant is generally obliged to bear his or her own attorney fees. [Cit.]" Id. at 381 (4). The same is true here.

Padgett claimed in her petition that DCH was not entitled to

---

[2] We note that this subsection also provides that it applies "only if notice of this subsection is given to the recipient at the time his application for medical assistance is filed." The record does not indicate whether such notice was given, but this issue was not raised by Padgett below and is not raised on appeal. We therefore cannot address it.

recover anything, because she had not received "full and complete compensation" for her injuries. But the "complete compensation rule" applies only "to the subrogation rights of an insurance carrier who has received payments from the injured party" and does not apply to Medicaid liens. *Holland*, supra, 236 Ga. App. at 834 (2). The trial court did not err in refusing to reduce DCH's recovery by the amount of the attorney lien.

*Judgment affirmed. Ruffin, P. J., and Miller, J., concur.*

DECIDED MAY 6, 2003.

*John M. Brown,* for appellant.

*Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General, William C. Joy, Senior Assistant Attorney General, Charles E. Hoffecker, Mark J. Cicero, Assistant Attorneys General,* for appellee.