A11A1657. WESTMORELAND et al. v. JW, LLC.

(722 SE2d 102)

BARNES, Presiding Judge.

This action involves a landlord-tenant dispute over the amount of unpaid rent that was owed for the use of commercial property. Appellee JW, LLC is the current landlord. Appellants Robert L. Westmoreland, Larry Holder, and Lonnie Holder d/b/a Pizing's Wings and Things (collectively, "Pizing's") were the tenants during the time in question. Following a bench trial, the trial court agreed with JW as to the amount of unpaid rent that was owed by Pizing's and entered judgment in JW's favor. On appeal, Pizing's argues that

the trial court erred: (1) by allowing JW to reopen its case-in-chief and introduce into evidence the written assignment agreement entered between the original landlord and JW; (2) by failing to find that the parties had mutually departed from the strict terms of the lease; and (3) by holding Pizing's liable for rent accruing after JW filed the instant lawsuit. For the reasons discussed below, we affirm.

On appeal from the entry of judgment in a bench trial, we view the evidence in the light most favorable to the trial court's verdict. *Cox Interior v. Bayland Properties*, 293 Ga. App. 612, 613 (1) (667 SE2d 452) (2008). So viewed, the evidence showed that in January 2005, Pizing's entered into an agreement to lease space in a shopping center for the operation of a sports bar and restaurant (the "Lease"). While the Lease was entered into for an original term of five years, it contained a separate provision authorizing automatic renewal for one additional five-year term. Pursuant to the Lease, Pizing's was required to pay base rent in addition to a share of operating expenses and common area maintenance ("CAM") charges on a monthly basis.

The Lease named F&M Shoppes of Friendship, LLC ("F&M") as the landlord. JW, LLC subsequently purchased the shopping center and became the successor-in-interest to F&M. F&M and JW entered into an agreement under which F&M assigned its rights and obligations under the Lease to JW.

In 2008, Pizing's was seriously affected by the downturn in the economy and was struggling to keep open the sports bar and restaurant. Pizing's advised JW that it would have difficulty continuing to make rent payments and needed "some relief on the rent." It is undisputed that from November 2008 onward, Pizing's either made no monthly rent payment or made a monthly rent payment in an amount less than what was specified in the Lease. The parties dispute, however, whether they agreed that Pizing's would remain liable for the accrued shortfall between the monthly rent specified in the Lease and the reduced rent that was actually paid from November 2008 onward.

In October 2009, the principals of Pizing's sold the sports bar and restaurant to an individual named Mickey Mixon. JW never entered into a written lease agreement with Mixon, but JW agreed to accept rental payments from him rather than Pizing's once he began operating the sports bar and restaurant in November 2009. Mixon ultimately failed to make rental payments, leading JW to file a dispossessory action and successfully obtain a writ of possession and judgment for past due rent against him. However, JW was unable to collect on its judgment against Mixon. The parties dispute whether Pizing's remained liable for any deficiencies in the rent payments from November 2009 onward, when Mixon began operating the

sports bar and restaurant.

In January 2010, JW filed the instant action against Pizing's for breach of the Lease. Following a bench trial in which the parties disputed the amount of unpaid rent that was owed by Pizing's, the trial court entered judgment in favor of JW in the principal amount of $91,405.84 for unpaid rent, plus prejudgment interest, attorney fees, and litigation expenses. This appeal followed.

1. During the bench trial, after the parties rested, the trial court allowed JW to reopen its case-in-chief and introduce into evidence the written assignment agreement between F&M and JW. Pizing's argues that the trial court erred in reopening the evidence to admit the assignment agreement without requiring JW to authenticate the document and without allowing Pizing's to cross-examine any witnesses about the document. As such, Pizing's asserts that JW was not entitled to rely upon the terms and provisions of the Lease, including the payment terms, and that the relationship between the parties instead was simply a tenancy-at-will that continued on a month-to-month basis.

Pizing's argument lacks merit. A trial court has broad discretion to allow a party to reopen the evidence after the party has presented its case-in-chief and rested. See *Taylor v. State*, 282 Ga. 502, 504 (3) (651 SE2d 715) (2007); *Bloomfield v. Bloomfield*, 282 Ga. 108, 110 (1) (d) (646 SE2d 207) (2007). Furthermore, Pizing's never objected to the introduction of the assignment agreement on the specific ground that it lacked proper authentication or that Pizing's should be permitted to cross-examine a witness regarding the document; thus, any objection on those particular grounds has been waived. See *Belans v. Bank of America*, 306 Ga. App. 252, 256 (3) (701 SE2d 889) (2010).

In any event, any alleged error by the trial court in admitting the assignment agreement was harmless. During its case-in-chief, JW introduced into evidence, without objection, two written addenda made part of the Lease that were executed after the shopping center had been sold to JW. The addenda, which were signed on behalf of Pizing's and JW, specifically recited that the original landlord had sold and assigned the Lease to JW and expressly defined JW as the current "Landlord." Both addenda provided that they would be made part of the Lease and that all terms and conditions of the Lease would remain in force and effect except where modified by the addenda. Hence, the two addenda incorporated into the Lease provided independent evidence, separate and apart from the assignment agreement itself, that JW was entitled to enforce the terms and conditions of the original Lease. It follows that the admission of the assignment agreement, even if error, caused no harm. See *Teems v. Bates*, 300 Ga. App. 70, 79 (3) (684 SE2d 662) (2009) (admission of

evidence was harmless because it was cumulative of other evidence admitted without objection).

2. In the bench trial, Pizing's raised the affirmative defense of mutual departure. On appeal, Pizing's argues that the trial court incorrectly calculated the amount of overdue rent because the court should have found that there had been a mutual departure from the strict terms of the Lease regarding the amount of monthly rent that was owed. Specifically, Pizing's contends that the uncontroverted evidence showed that it was never required, as a matter of practice, to pay CAM charges as part of its monthly rent and that JW orally agreed in November 2008 to modify the Lease to reduce the amount of monthly rent that was owed until the economy improved.

We are unpersuaded. "[A] mutual departure from the terms of an agreement results in a quasi-new agreement suspending the original terms of the agreement until one party has given the other reasonable notice of its intent to rely on the original terms." *Vakilzadeh Enterprises v. Housing Auth. of County of DeKalb*, 281 Ga. App. 203, 206 (635 SE2d 825) (2006). See OCGA § 13-4-4. But "[t]he question whether the parties' mutual conduct caused a waiver and effected a quasi-new agreement ordinarily is a question for the jury," and the factfinder's determination will not be disturbed if there is any evidence to support it. *Kusuma v. Metametrix*, 191 Ga. App. 255, 257 (3) (381 SE2d 322) (1989). See *Mahsa, Inc. v. Al-Madinah Petroleum*, 276 Ga. App. 890, 894 (1) (625 SE2d 37) (2005).

Here, JW's managing partner testified that the monthly amount of base rent and CAM due under the Lease was $6,805, and that Pizing's had paid all amounts due and owing until November 2008. Mr. Westmoreland, one of the principals of Pizing's, confirmed on cross-examination that the total amount of rent due up to November 2008 was $6,805 a month and that Pizing's was current on its rent payments until that point in time. According to JW's managing partner, JW agreed to allow Pizing's to temporarily pay a reduced amount of monthly rent beginning in November 2008 until the economy improved, but with the understanding between the parties that there would be no permanent rent forgiveness and that Pizing's would remain liable for the accrued shortfall in base rent and CAM charges. Shortly thereafter, JW sent a letter dated December 18, 2008 to Pizing's that was consistent with this understanding of the parties' arrangement in that it contained a chart of the shortfall in rent that was to be carried over from month to month. Pizing's never responded to the letter. JW sent another letter dated September 2, 2009 reflecting that the shortfall in rent had continued to accrue and discussing how Pizing's ultimately could go about paying back the shortfall. Again, Pizing's did not respond to the letter. Given this

combined evidence, the trial court was authorized to find that the parties never mutually departed from the terms of the Lease to relieve Pizing's from paying CAM charges or to permanently forgive a portion of the monthly rent that was owed. See *Mahsa, Inc.*, 276 Ga. App. at 894 (1).

Pizing's relies upon *J. E. M. Enterprises v. Taco Pronto*, 145 Ga. App. 573, 573-574 (1) (244 SE2d 253) (1978) and *B-Lee's Sales Co. v. Shelton*, 141 Ga. App. 870, 870-873 (1) (234 SE2d 702) (1977), but both of those cases are clearly distinguishable. *J. E. M. Enterprises*, 145 Ga. App. at 573-574 (1), did not address whether the evidence demanded a finding of mutual departure; rather, the issue was whether certain testimony concerning an oral modification of a contract was admissible. In *B-Lee's Sales Co.*, 141 Ga. App. at 870, the landlord twice agreed to a reduced rate of rent and told the tenants to just "do the best you can" in making rent payments. Unlike in the present case, there was no evidence that the parties had agreed that the tenants would remain liable for the shortfall between the original rent amount and the reduced amount.

3. Pizing's maintains that the uncontroverted evidence showed that JW terminated the Lease and released it from any future rent obligations by renting the same space in the shopping center to Mixon, who purchased the sports bar and restaurant from Pizing's and began operating the business in November 2009. Consequently, Pizing's contends that the trial court erred in holding it responsible for any unpaid rent that accrued after that date.

We disagree. As an initial matter, to the extent that Pizing's assigned the Lease to Mixon, "unless there exists evidence of intent for an assignment to act as a novation, an original tenant is not normally released from liability when a lease is assigned." *Fagbemi v. JDN Realty Corp.*, 275 Ga. App. 540, 542 (621 SE2d 765) (2005). Furthermore, the Lease provided that among other remedies, the landlord had the option, upon the tenant's default, either to terminate the lease and sue for damages, or to reenter the premises and rent to another party, with the defaulting tenant being liable for any deficiency between the rent owed under the Lease and the rent obtained on re-letting. And the question of which of these two contractual remedies was exercised by JW was for the trier of fact to decide. See *Nobles v. Jiffy Market Food Store Corp.*, 260 Ga. App. 18, 22 (2) (579 SE2d 63) (2003); *Buford-Clairmont v. Jacobs Pharmacy Co.*, 131 Ga. App. 643, 646-647 (1) (206 SE2d 674) (1974).

JW's managing partner testified that he had a meeting with Mixon and the principals of Pizing's regarding the renting of the space to Mixon, that at no time did he indicate that Pizing's would be released from any future delinquent rental payments, and that he sent a letter to Pizing's to this effect. Hence, there was some

evidence from which the trial court was authorized to find that no novation occurred and that JW had exercised its contractual right to reenter the premises and rent to another party, with Pizing's remaining liable for any deficiencies. Compare *Pinkerton's, Inc. v. Palmer, Inc.*, 113 Ga. App. 859, 860-861 (149 SE2d 859) (1966) (landlord terminated lease with old tenant as a matter of law where landlord engaged in extensive refurbishment and renovations of the premises on behalf of a new tenant after the old tenant had vacated the premises with only five months remaining on a five-year lease).

Pizing's argues that JW is judicially estopped from taking the position that Pizing's continued to be liable for rent after November 2009 in light of JW's dispossessory action filed against Mixon. But the doctrine of judicial estoppel depends on three factors, including that "the party's later position must be clearly inconsistent with its earlier position." (Citation and punctuation omitted.) *SuperValu v. KR Douglasville, LLC*, 272 Ga. App. 710, 714 (3) (613 SE2d 154) (2005). Because the Lease provided JW with the option of reentering the premises and renting it to another party without releasing Pizing's from liability for any deficiency in rent, there was nothing inconsistent in JW renting the premises to Mixon, pursuing a dispossessory action against him for his unpaid rent, and then pursuing Pizing's for the deficiency between the rent owed under the Lease and whatever amount was ultimately obtained from Mixon.

4. Lastly, Pizing's maintains that the trial court incorrectly held it liable for rent accruing after January 2010, the month that JW filed the instant suit.[1] According to Pizing's, JW was not entitled to recover rent installments that came due after the suit was commenced, given the absence of a formal amendment of the complaint.

Again, we disagree. "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." OCGA § 9-11-15 (b). See *Mtg. Sav. Co. v. KKFB Investment Co.*, 196 Ga. App. 283, 284 (1) (396 SE2d 16) (1990). OCGA § 9-11-15 (b) has been applied where a landlord during the course of trial seeks the recovery of rent installments that became overdue only after the filing of the complaint. See *Price v. Age, Ltd.*, 194 Ga. App. 141, 144-145 (3) (390 SE2d 242) (1990). Compare *Nickerson v. Candler*

---

[1] Embedded in this enumeration of error is the assertion by Pizing's that the trial court erred in calculating damages by failing to give it credit for a security deposit that it paid upon executing the Lease. But "a party cannot expand [its] enumerations of error through argument or citation in [its] brief." (Citation and punctuation omitted.) *Smyrna Dev. Co. v. Whitener Limited Partnership*, 280 Ga. App. 788, 790 (1) (635 SE2d 173) (2006). See *Brown v. State*, 307 Ga. App. 99, 104 (2) (c) (704 SE2d 227) (2010). Hence, Pizing's has waived and abandoned this assertion of error for purposes of appeal. See *Smyrna Dev. Co.*, 280 Ga. App. at 790 (1).

*Bldg.*, 156 Ga. App. 396, 399-400 (5) (274 SE2d 582) (1980) (concluding that default judgment for unpaid rent was properly limited to payments that were overdue at the time suit was filed).

At the bench trial, JW introduced documentary evidence detailing the total amount of unpaid rent that had accrued up through July 2010, and JW's principal similarly testified that JW was seeking unpaid rent that had accrued into the summer of 2010. It was not until closing argument that Pizing's objected and raised for the first time the issue of whether JW could seek rent that had become overdue after the filing of the complaint. By failing to make a contemporaneous objection to the documentary evidence and testimony of JW's principal, Pizing's consented under OCGA § 9-11-15 (b) to the implied amendment of the pleadings to include a claim for the additional unpaid rent. See *Sugarloaf Mills Limited Partnership &c. v. Record Town*, 306 Ga. App. 263, 268 (3) (701 SE2d 881) (2010).

*Judgment affirmed. Adams and Blackwell, JJ., concur.*

DECIDED JANUARY 9, 2012.

*Sanders & Ranck, Janney E. Sanders*, for appellants.

*Mills & Hoopes, Timothy S. Walls, Zachary R. Poole*, for appellee.

