**THIRD DIVISION**
**MIKELL, P. J.,**
**MILLER and BLACKWELL, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**June 15, 2012**

# In the Court of Appeals of Georgia

A12A0369.  STOCKBRIDGE   DENTAL   GROUP,   P.C.   v.
FREEMAN.

MILLER, Judge.

Myrtle Freeman brought a dental malpractice action against Stockbridge Dental Group, P.C. ("SDG"), in response to which SDG asserted a counterclaim and affirmative defenses based upon an exculpatory clause and covenant not to sue contained in a form signed by Freeman prior to her treatment. The trial court granted Freeman's motions to strike SDG's counterclaim and affirmative defenses, finding that the exculpatory clause was against public policy and unenforceable under *Emory University v. Porubiansky*, 248 Ga. 391 (282 SE2d 903) (1981). This Court granted SDG's request for interlocutory review of the trial court's order. On appeal, SDG argues that *Emory*, supra, 248 Ga. 391, is not controlling, and that SDG's exculpatory

clause did not violate public policy. We disagree and conclude that this case does in fact fall within the purview of *Emory*, and therefore, the exculpatory clause and covenant not to sue were void as against public policy.

"We review a trial court's decision on a motion to strike for an abuse of discretion." (Citation omitted.) *Cogland v. Hosp. Auth. of City of Bainbridge*, 290 Ga. App. 73, 74 (1) (658 SE2d 769) (2008). OCGA § 9-11-12 (f) provides that "[u]pon motion . . ., the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Moreover, "a motion to strike a defense should not be granted unless it appears to a certainty that the plaintiff would succeed despite any state of facts which could be proved in support of the defense." (Citations omitted.) *Wellbaum v. Murphy*, 122 Ga. App. 654 (1) (178 SE2d 690) (1970).

In her malpractice complaint against SDG and Dr. Anup Dadhania, the treating dentist who was employed by SDG,[1] Freeman acknowledged that she had signed a form in which she had promised not to sue SDG regarding her dental care. In relevant part, this form provided as follows:

---

[1] We note that Dr. Dadhania is not a party to this appeal.

2

You will be seeing Dr. Anup Dadhania today and he. . . will be solely responsible for your dental care. No other party or person shall be liable.

. . . I understand that each dentist is an individual practitioner and is individually and solely responsible for the dental care rendered to me and any associated financial matters. I agree to this covenant not to sue the corporation that employs the dentist or its shareholders regarding my dental care and associated financial matters.

In the last count of her complaint, Freeman sought declaratory judgment stating that this exculpatory clause violated public policy.

In SDG's answer, it asserted a counterclaim against Freeman, claiming that she had breached her covenant not to sue, and it also raised several affirmative defenses based upon the exculpatory clause. Freeman filed motions to strike SDG's counterclaim and affirmative defenses. The trial court found that the exculpatory clause was contrary to public policy under *Porubiansky v. Emory Univ.*, 156 Ga. App. 602 (275 SE2d 163) (1980), aff'd, *Emory*, supra, 248 Ga. 391, and granted Freeman's motions to strike SDG's counterclaim, as well as its affirmative defenses that relied upon the exculpatory clause. The trial court certified its order for immediate review, and this Court granted SDG's application for interlocutory appeal. In four

3

enumerations of error, SDG essentially argues that *Emory* does not control the instant case, and that the exculpatory clause did not violate public policy.[2] SDG's arguments are without merit.

In *Emory*, supra, 248 Ga. at 392, a dental patient sued Emory University's School of Dentistry Clinic and one of its employee-dentists for malpractice. Emory asserted that the signing of an information-consent form was a complete bar to the action, and the trial court granted summary judgment to Emory and the dentist based upon the exculpatory clause in the form. Id. That clause provided, in pertinent part, as follows:

> In consideration of Emory University School of Dentistry performing dental treatment, I do hereby expressly waive and relinquish any and all claims of every nature I . . . may have against Emory University, its officers, agents, employees, or students, their successors, assignees, administrators, or executors; and further agree to hold them harmless as the result of any claims . . . arising out of any dental treatment rendered, regardless of its nature or extent.

---

[2] Embedded as a footnote in its first enumeration of error, SDG also argues that this Court should reverse the trial court's order because the trial court did not have jurisdiction to rule on Freeman's equitable claim for declaratory relief. "But a party cannot expand its enumerations of error through argument or citation in its brief. Hence, [SDG] has waived and abandoned this assertion of error for purposes of appeal." (Citations and punctuation omitted.) *Westmoreland v. JW, LLC*, 313 Ga. App. 486, 491 (4) n.1 (722 SE2d 102) (2012).

(Punctuation omitted.) Id. The Supreme Court of Georgia affirmed this Court's holding that such clause was void as against public policy and invalid as a defense to the patient's dental malpractice action. Id. at 391-392, 394-395.

Despite the fact that *Emory* is almost squarely on point with this case, SDG nevertheless argues that *Emory* does not control because its exculpatory clause limited only SDG's liability, whereas the clause in *Emory* purported to completely bar all claims against not only the clinic, but also that of the dentists and dental students. According to SDG, *Emory* "plainly applies only to an exculpatory clause with global release language, not an exculpatory clause with a limited release . . . as in this case." SDG misconstrues the holding of *Emory*. Notably, the Supreme Court in *Emory*, supra, 248 Ga. at 395, held that the exculpatory clause was void as to both the clinic and the dentist. The Supreme Court concluded that the dental clinic itself was engaged in the practice of dentistry and was under a duty to exercise reasonable care. Id. at 393, 395. Here, "in offering services to the public[, SDG] is [likewise] engaged in the practice of dentistry." (Punctuation omitted.) Id. at 395. Thus, like the dental clinic in *Emory*, SDG was under a duty to exercise reasonable care and skill in the performance of dental services. And SDG cannot relieve itself from that duty via the exculpatory clause used in this case.

5

The cases cited by SDG do not persuade us otherwise. Notably, in further support of its argument that *Emory* does not apply to exculpatory clauses with limited release language, SDG cites *TSG Water Resources v. D'Alba & Donovan Certified Public Accountants*, 260 F. App'x 191 (11th Cir. 2007), and *Mosteller Mansion, LLC v. Mactec Engineering & Consulting of Ga.*, No. COA07-664, 2008 WL 2096769, at *3 (II) (N. C. Ct. App. May 20, 2008) (applying Georgia law). Significantly, however, neither case involved the negligence of dental professionals. *TSG* involved an exculpatory clause purporting to eliminate the duty of care for accountants; the Eleventh Circuit expressly held that it was "not persuaded that the duties of an accountant are analogous to the duties of a medical or dental professional." *TSG Water Resources*, supra, 260 F. App'x at 204 (V). And *Mosteller*, supra, 2008 WL 2096769, at *1, involved exculpatory language used by an engineering firm. Moreover, the exculpatory clauses in those cases were limited insofar as they limited the types of damages that could be sought. *TSG Water Resources*, supra, 260 F. App'x at 204 (V); *Mosteller*, supra, 2008 WL 2096769, at *6 (III) (B). While the exculpatory clause here was limited in its application to SDG, it nevertheless purported to preclude legal action against SDG entirely, thereby eliminating its duty of care. A dental office is not permitted to do this under *Emory*.

6

Finally, SDG contends that *Emory* is factually distinguishable from the instant case because SDG is a dental office rather than a school of dentistry. This factual distinction, however, was implicitly rejected by the Supreme Court in *Emory*. In *Emory*, supra, 248 Ga. at 395, the Supreme Court held that the clinic's status as primarily a training institution did not allow for an exemption from the duty to exercise reasonable care. And since a training institution is "not exempted from the standard of care necessary for the protection of the public," id., then neither is a private dental office such as SDG.

In sum, the exculpatory clause and covenant not to sue used in this case clearly fall within the purview of *Emory*. Therefore, contrary to SDG's contention otherwise, the clause and covenant were void as against public policy. As such, the trial court did not abuse its discretion in granting Freeman's motions to strike SDG's counterclaim and affirmative defenses that relied upon the exculpatory clause and covenant not to sue.

*Judgment affirmed. Mikell, P. J., and Blackwell, J., concur.*