A01A1489. MAHSA, INC. et al. v. AL-MADINAH PETROLEUM, INC. et al.

(552 SE2d 876)

PHIPPS, Judge.

This is a continuation of *Al-Madinah Petroleum v. Mahsa, Inc.*[1] Mahsa, Inc. and its president, Hassanzadeh, sued Al-Madinah Petroleum, Inc. and its president, Dhanani, for rescission of a lease between Mahsa as tenant and Al-Madinah as landlord. After the leased premises were substantially damaged by a tornado during the pendency of the suit, Al-Madinah sought by counterclaim to recover damages based on Mahsa's noncompliance with a lease provision requiring it to procure and maintain casualty insurance on the property. The trial court granted summary judgment to Mahsa on the counterclaim.[2] In the prior appeal, we reversed. On remand, the trial court awarded summary judgment to Al-Madinah on the counterclaim. We again reverse.

In August 1997, Al-Madinah leased a gas station/convenience store to Mahsa. Article 20 of the lease required Mahsa to procure and maintain various types of insurance, including policies insuring Al-Madinah's real property and Mahsa's personal property against casualty loss. If Mahsa did not procure the requisite policies, Article 20 authorized Al-Madinah to obtain the insurance and require payment of the premiums by Mahsa as additional rent. Article 20 further provided that executed copies or original certificates of all policies of insurance procured and maintained by Mahsa or Al-Madinah were to be delivered to the other party at the commencement of the lease.

In our prior decision, we noted

that Mahsa did not purchase the required [real property] insurance, that Al-Madinah did procure an insurance policy listing the leased premises on its schedule of locations, that the insurer denied Al-Madinah's claim for damages caused by the tornado on the ground that the leased premises were not covered by the policy at the time of the tornado, and that a resulting [federal] lawsuit by Al-Madinah against the insurer [was then] pending.[3]

In the prior appeal, Al-Madinah asserted

that it did not procure this policy in lieu of the insurance which Mahsa was obligated to obtain but simply made claim

---

[1] 242 Ga. App. 570 (529 SE2d 662) (2000).
[2] Id. at 572 (2).
[3] Id. at 572-573 (2).

on the policy when it discovered that Mahsa had not insured the property against casualty loss. Mahsa [did] not dispute this assertion or otherwise claim that it failed to maintain the required insurance in reliance on actions taken by Al-Madinah.[4]

We held that Mahsa was not entitled to summary judgment on Al-Madinah's counterclaim because there was a genuine issue of material fact on the question of whether insurance coverage existed.

After this case was remanded to the trial court, however, Mahsa contested Al-Madinah's assertion that its policy was not intended as a substitute for the insurance which Article 20 required Mahsa to obtain. And Mahsa argued that Al-Madinah waived, and is estopped to enforce, the requirement that Mahsa obtain casualty insurance.

Following remand, the court in the federal suit determined that, at the time of the tornado in April 1998, the subject property had been deleted from Al-Madinah's insurance policy. Based on this determination, and on its finding that there is no evidence to support Mahsa's claims of waiver and estoppel, the trial court in this action awarded summary judgment to Al-Madinah on its counterclaim. Because we do find evidence of waiver and estoppel, we reverse.

It is undisputed that at the commencement of the lease in August 1997, Al-Madinah had an insurance policy which insured various of its real properties against casualty loss and that it added the property leased to Mahsa to the policy's schedule of locations. In September, however, the property leased to Mahsa was deleted from the policy at the request of Al-Madinah's insurance agency. In the federal suit, Dhanani made a declaration under oath that he had no recollection of deleting the real property coverage from the policy, although he did recall discussing a deletion of personal property insurance coverage with the agency because the property had been leased to Mahsa. Also in the federal suit, Al-Madinah unsuccessfully argued that the insurer's deletion of real property coverage was ineffective because the insurer had not complied with Georgia statutory procedures for cancellation of insurance.

On remand in this case, Hassanzadeh, who required the assistance of an interpreter in negotiating and executing the lease, testified by affidavit that Dhanani represented to him that Al-Madinah was insuring its real property interest, that it was his understanding that he was supposed to insure only his own personal property against loss, and that he obtained a policy providing personal property coverage from State Farm. Both Hassanzadeh and his inter-

---

[4] Id. at 573 (2).

preter testified that no insurance policies or certificates were exchanged between the parties at the signing of the lease.

The record does show, however, that in December 1997 Al-Madinah's attorney sent Mahsa a letter requesting proof of all insurance coverages required by Article 20 of the lease. Mahsa responded with a letter from its attorney stating that the required policy had been obtained from Hassanzadeh's State Farm agent, to whom Al-Madinah's counsel was referred. Hassanzadeh testified that Al-Madinah and Dhanani did not pursue the matter further until after the tornado. According to Hassanzadeh, any rental payments owed by Mahsa to Al-Madinah as reimbursement for the premiums on its policy were not due until after the tornado.

Under the present evidentiary posture of the case, a jury could find that Al-Madinah decided to purchase real property casualty insurance on its own, and that Mahsa's failure to procure such insurance was attributable to representations by Dhanani that Al-Madinah was providing its own coverage and to Al-Madinah's failure to enforce the lease requirement that Mahsa obtain such coverage. Whether Al-Madinah waived the requirement that Mahsa obtain real property casualty insurance, or is estopped to enforce this requirement, is thus for a jury to decide.[5]

Although Article 33 of the parties' lease provides in part that no provision of the lease shall be deemed to have been waived absent a written waiver signed by the landlord, Article 33 further states that failure of the landlord to insist upon the strict performance of any provision shall not be construed as a waiver "for the future of" any such provision. Because the lease is thus ambiguous about whether past performance could be waived by the landlord's failure to insist upon performance, the question of waiver is for a jury to decide.[6]

*Judgment reversed. Smith, P. J., and Barnes, J., concur.*

DECIDED JULY 19, 2001 — ▮

*David C. Farshy*, for appellants.
*Higgins & Aubner, Michael W. Higgins*, for appellees.

---

[5] See generally *Allstate Financial Corp. v. Dundee Mills*, 800 F2d 1073 (11th Cir. 1986) (waiver); *Horne v. Exum*, 204 Ga. App. 337, 338 (419 SE2d 147) (1992) (estoppel); *City of Albany v. Mitchell*, 81 Ga. App. 408, 411 (1) (59 SE2d 37) (1950) (jury question).

[6] See generally *Markowitz v. Wieland*, 243 Ga. App. 151, 156 (3) (532 SE2d 705) (2000) (ambiguity in contract language presents jury question).