A05A0907. MAHSA, INC. et al. v. AL-MADINAH PETROLEUM, INC. et al.

(625 SE2d 37)

ADAMS, Judge.

This is the third appearance of this case which involves a dispute stemming from the terms of a written commercial lease executed in August 1997 under which Al-Madinah Petroleum, Inc. leased a gas station/convenience store to Mahsa, Inc. for 20 years. Although the lease obligated Mahsa to insure the property against a casualty loss, it also authorized Al-Madinah to obtain insurance if Mahsa failed to do so. It is undisputed that Mahsa did not obtain casualty insurance. In February 1998, Mahsa and its chief executive officer, Esmaeil Hassanzaheh, for reasons not relevant here, filed suit against Al-Madinah and its president, Aziz Ali Dhanani. Shortly after suit was filed, a tornado virtually destroyed the leased premises in April 1998. In *Al-Madinah Petroleum, Inc. v. Mahsa, Inc.,* 242 Ga. App. 570 (529 SE2d 662) (2000), we reversed summary judgment finding a genuine issue of material fact remained for resolution as to the existence of casualty insurance.

Meanwhile, in a separate proceeding in federal district court, the federal court determined that at the time of the tornado in April 1998, the subject property had been deleted from Al-Madinah's insurance policy.[1] See *Mahsa, Inc. v. Al-Madinah Petroleum, Inc.,* 250 Ga. App. 691, 692 (552 SE2d 876) (2001) (discussing the federal decision). In

---

[1] Al-Madinah had insurance coverage with Travelers for four different properties. Believing that Mahsa had obtained insurance, Dhanani cancelled coverage on this particular property. Dhanani sued Travelers on the basis that the cancellation did not take effect because Travelers did not give written notice of cancellation. The federal court rejected this argument, finding the policy was not cancelled, only part of the coverage had been eliminated.

other words, the casualty loss was an uninsured loss. Relying upon the federal court's determination and its own finding that there was no evidence to support Mahsa's defenses of waiver and estoppel, the trial court proceeded to award summary judgment to Al-Madinah on its counterclaim. See id. This Court again reversed summary judgment upon determining that jury issues remained for resolution as to whether Mahsa's failure to procure casualty insurance as the lease required was attributable to representations by Dhanani that Al-Madinah was providing its own coverage or whether that failure was attributable to Al-Madinah's failure to enforce the requirement in the lease that Mahsa obtain such coverage. Id.[2]

Mahsa now challenges the verdict and judgment from the ensuing jury trial. On appeal from a jury verdict, we construe the evidence to support the jury verdict and judgment. *Neal v. CSX Transp.*, 213 Ga. App. 707, 709 (2) (445 SE2d 766) (1994). So considered, the evidence consisted primarily of the lease, letters exchanged between counsel, and the testimony of Hassanzaheh and Dhanani.

Paragraph 20 of the lease obligated Mahsa to obtain several types of insurance including comprehensive general liability insurance, personal property insurance, and fire insurance. In addition, subsection (d) of Paragraph 20 required Mahsa to "procure and maintain in full force and effect an All Risks Property Insurance Policy on the Demised Premises," and improvements thereon. Paragraph 20 ended by stating: "[i]f Tenant shall not comply with its covenants made in this Article, Landlord may cause insurance as aforesaid to be issued, and in such event, Tenant agrees to pay, as additional rent, the premiums for any such insurance upon Landlord's demand." In addition, the lease contained this "No Waiver" clause in Paragraph 33:

> Failure of Landlord to insist upon the strict performance of any provision or to exercise any option or any rules and regulations shall not be constructed as a waiver for the future of any such provision, option, rule or regulation. The receipt by Landlord of rent with knowledge of the breach of any provisions of this Lease shall not be deemed a waiver of

---

[2] In deciding that issues remained for jury resolution, this Court considered Hassanzaheh's affidavit. Although apparently not considered by the jury, in this affidavit, Hassanzaheh testified, "[d]uring my conversations with Mr. Dhanani he stated that he has had insurance on the property that I rented for Mahsa, Inc. The insurance matter came up again after the tornado damage on April 9, 1998. Mr. Dhanani again stated that he had insurance on the property [at issue]." At trial, however, Hassanzaheh denied ever discussing insurance with Dhanani until after the tornado. (See infra, for discussion of this trial testimony.)

such breach. *No provision of this Lease shall be deemed to have been waived unless such waiver be in writing signed by Landlord.*

(Emphasis supplied.) Trouble arose shortly after the lease became effective. By certified letter dated December 19, 1997, Al-Madinah informed Mahsa that the rent and commissions were past due. The letter invoked Paragraph 20 of the lease and stated, "please provide proof of all required insurance coverages to the undersigned on or before January 10, 1998. Such proof should include, but is not limited to, Certificates of Insurance naming the Landlord as an additional named insured."

In response to Al-Madinah's letter, Mahsa through counsel wrote a detailed letter dated December 29, 1997. Responding to the demand for proof of insurance, Mahsa replied:

> Tenant in compliance with the paragraph 20 of the Lease has obtained insurance policy through his State Farm Insurance Agent, Ms. Floria Izadi, Telephone [number]. Please contact her if you need any information about the policy. We will provide you with a copy of the policy at a later date.

Hassanzaheh acknowledged having purchased inventory and liability insurance from State Farm but claimed that he did not understand that he was supposed to obtain other insurance. He admitted receiving between $72,000 and $73,000 from State Farm for his losses in the tornado. Hassanzaheh denied that Dhanani had ever asked him about insurance and claimed that he did not realize until after the tornado that he was supposed to have structural insurance. When Hassanzaheh was asked, "Did [Dhanani] give you the impression he had insurance? Did he tell you he had insurance?" Hassanzaheh responded in the negative. Hassanzaheh also testified that after his counsel's response to Al-Madinah's certified letter, he and Dhanani had no further discussions about insurance until after the tornado struck in April 1998.

Dhanani flatly contradicted parts of Hassanzaheh's testimony. Dhanani denied ever telling Hassanzaheh that he did not have to carry insurance on this property. Dhanani claimed to have repeatedly asked Hassanzaheh for proof of insurance. He testified that Hassanzaheh showed him a copy of a cancelled check "and made me believe that he already purchased insurance but [was] waiting on a policy." Dhanani added, "sometimes it does take 60 to 90 days to get the policy issued. So I relied on his testimony." Dhanani also testified that he relied on the letter from Mahsa's counsel stating that Mahsa was in

compliance with the insurance requirements of the lease. He testified that he tried to contact Mahsa's State Farm agent directly.

Mahsa offered no evidence that before the tornado Dhanani had told Hassanzaheh that Dhanani had his own insurance or that Hassanzaheh relied upon such representation. On the contrary, Hassanzaheh testified that after the letter from Al-Madinah demanding proof of insurance by January 10, and Mahsa's letter in response, nothing more was said about insurance until after the tornado struck. Whether Dhanani mistakenly believed that his oral cancellation of coverage on this property was ineffective or whether Dhanani told Hassanzaheh *after* the tornado that he had coverage are immaterial to Mahsa's waiver and estoppel defenses — given Al-Madinah's demand for proof of coverage, Mahsa's statement of compliance with the insurance requirements, and Hassanzaheh's unequivocal testimony that there were no further discussions about insurance between the time of the exchange of correspondence and the tornado. This exchange occurred between Hassanzaheh and his own counsel:

> Counsel: So did [Dhanani] ever ask you about your insurance?
> Hassanzaheh: Never.
> Counsel: Did you have to buy insurance?
> Hassanzaheh: I had my —
> Counsel: You had your own insurance, right?
> Hassanzaheh: Own insurance.
> Counsel: But he never told you you need to buy insurance on the building?
> Hassanzaheh: Never, never. Never he don't [sic] ask about insurance.
> Counsel: Did he give you the impression he had insurance? Did he tell you he had insurance?
> Hassanzaheh: Never. We don't talk about insurance.

In finding for Al-Madinah, the jury answered two specific interrogatories on the verdict form. The jury found that Al-Madinah did not waive Mahsa's obligation to obtain casualty insurance. It also found that Al-Madinah was not estopped from claiming that Mahsa was required to carry casualty insurance. The trial court entered judgment for Al-Madinah. Thereafter, the court denied Mahsa's motion for judgment notwithstanding the verdict (j.n.o.v.) and its motion for new trial.

1. Mahsa claims that the verdict was contrary to the evidence. Mahsa contends that Al-Madinah "did not require to see any proof or copy of insurance at the commencement of the lease, in many meetings in the store and at the time of payment of the rent in landlord's

office in person." Asserting "mutual departure" from the terms of the lease, Mahsa argues that waiver may be inferred from actions, conduct, or a course of dealing. See OCGA § 13-4-4; *Southern Feed Stores v. Sanders*, 193 Ga. 884, 887 (3) (20 SE2d 413) (1942).

While it is true that a distinct stipulation in an agreement may be waived by the conduct of the contracting parties, "it must appear that it was the intention of the parties to treat such stipulations as no longer binding." *Sanders*, supra at 887. Here, the jury found that Al-Madinah did not waive Mahsa's obligation to obtain casualty insurance and the record supports that finding. Dhanani testified that he asked Hassanzaheh for proof of insurance numerous times and relied upon Mahsa's lawyer's letter "saying he's in compliance." Since the record contains some support for the jury's finding that Al-Madinah did not waive the requirement that Mahsa obtain casualty insurance, that finding must be affirmed. See *Lincoln v. Tyler*, 258 Ga. App. 374, 375 (574 SE2d 440) (2002).

2. (a) Mahsa asserts that the "[c]onduct of the trial court was objectionable according to OCGA § 9-10-7 which requires a reversal." Mahsa contends that the trial judge expressed his opinion "about the facts of the case and what has not been proven." Mahsa claims that during the charge conference, the trial court reluctantly agreed to give a charge on estoppel even though the court expressed its own personal opinion that the evidence did not support such a charge. Arguing that the trial court's remarks constituted reversible error, Mahsa claims that it is error for a trial court "to make remarks fortifying [the] position of one party over another." Neither the record nor the law supports Mahsa's argument. OCGA § 9-10-7 states in part that: "[i]t is error for any judge, during the progress of any case, or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved." OCGA § 9-10-7, however, applies to a trial court's expression of opinions and remarks *before a jury* and does not apply to private conversations with counsel about the conduct of the case. See *Ray v. Marietta Marine, Inc.*, 163 Ga. App. 690, 691 (3) (294 SE2d 698) (1982). Also, the question of whether OCGA § 9-10-7 has been violated is not reached unless an objection or motion for mistrial is made. *Provost v. Gwinnett County*, 199 Ga. App. 713, 714 (4) (405 SE2d 754) (1991). Here, no objection or motion for mistrial was made. See *Myrick v. State*, 155 Ga. App. 496, 498 (3) (271 SE2d 637) (1980) (absent objection or a motion for mistrial, one cannot later complain of any alleged expression of opinion by the trial court). In any event, since it was Mahsa who sought a charge on estoppel, and the transcript shows that the trial court fully and accurately instructed the jury on that principle, Mahsa failed to show harm.

(b) In a related claim, Mahsa contends that the trial court failed to remain neutral and impartial as required by OCGA § 15-6-6. Mahsa complains that the trial court "repeatedly . . . showed his disagreement and displeasure with the findings of the Court of Appeals of Georgia." Mahsa claims that the "[t]rial court failed to show he was impartial." We find otherwise. Mahsa has not cited and we have not found any instance of impropriety on the part of the trial court. This claim has no merit.

3. Mahsa contends that the trial court failed to give the proper and required jury charges. Mahsa argues that the trial court's instructions were "very confusing" and were "legally and factually incorrect."

(a) First, Mahsa claims that the trial court improperly shifted the burden of proof on the affirmative defenses. Mahsa asserts that because Al-Madinah and Dhanani filed the counterclaim, "they [had] the obligations to prove that they did not waive their right and [that] they are not estopped from holding Mahsa liable for the tornado damages under the lease contract."

Waiver and estoppel are affirmative defenses under OCGA § 9-11-8 (c). As such the burden of proof rests with the party asserting the defense. See *Mortensen v. Fowler-Flemister Concrete*, 252 Ga. App. 395, 396 (2) (555 SE2d 492) (2001). As Mahsa asserted these defenses, Mahsa had to establish them, as counsel for Mahsa acknowledged in this exchange during the charge conference:

> Trial court: So the jury's going to be deciding two special interrogatories, right? And we're in agreement that Mr. Farshy and his client have the burden of proof on those two special interrogatories; is that correct?
> Mr. Farshy: That's correct.

Thus, there was no error. See id.

Mahsa further complains that the jury could "not tell who is plaintiff and who is defendant and who is suppose [sic] to prove the affirmative defenses." In essence, Mahsa is arguing that because the jury found in favor of Al-Madinah, the jury must have been "confused" and did not follow the law and did not understand its instructions.

Mahsa approved the verdict form prior to its submission to the jury. After the verdict, Mahsa posed no objection to the form itself but counsel stated, "I just want to make sure they understand what this means." In response to Mahsa's request, the court verified with the foreman then with the other jurors that they understood the meaning of the verdict. There was no error.

(b) Mahsa also contends that the trial court erred by failing to give five of its requested charges. A trial court, however, does not err

in refusing to give a requested charge that is not authorized by the evidence or is confusing, misleading, inapt, or not precisely tailored or adjusted to the evidence. See *Wagner v. Pierce*, 247 Ga. App. 882, 884 (2) (545 SE2d 408) (2001). In deciding whether a trial court properly refused to give a requested charge, we consider the instruction as a whole to determine whether it sufficiently or substantially covered the principles in the requested charge. See *Mortensen*, supra, 252 Ga. App. at 397 (2).

(i) Mahsa first contends that the trial court erred by failing to give its request no. 1 which stated:

[I]n general an insured has a duty to examine and reject a policy providing incorrect or insufficient coverage. The insured has a legal duty to examine the contract, observe what coverage it provided, and if the coverage was not correct, either reject the policy as written or renegotiate with the insurer.

The trial court refused to give this charge finding it inappropriate because the case did not involve a dispute between an insured and his insurer. Instead, the court gave this instruction, "I charge you further that a person who obtains insurance remains responsible to make sure there is coverage and the coverage is adequate." We discern no error.

(ii) Mahsa claims that the trial court erred in refusing to give two charges that it submitted on estoppel. Mahsa's request no. 5 stated, "estoppel means that a party is prevented by his own acts from claiming a right to detriment of other party who was entitled to rely on such conduct and has acted accordingly. An inconsistent position may not be adopted to loss or injury of another." Request no. 6 stated, "[e]stoppel is a doctrine by which a person may be precluded by his act or conduct or silence when it is his duty to speak from asserting a right which he otherwise would have had."

The trial court instructed the jury on the principle of estoppel in considerable detail. The instruction on estoppel, when considered in its entirety, covered the essential principles in the requested charges and did so with greater clarity. Mahsa's argument therefore is without merit.

(iii) Mahsa asserts that the trial court erred by failing to charge its request no. 9. This charge apparently dealt with contract law but the exact wording of the charge does not appear in the transcript. "The burden is on the appellant to show error by the record." *Kmart Corp. v. Merriweather*, 254 Ga. App. 13, 14 (561 SE2d 181) (2002). Here, there is nothing to review.

(iv) Contrary to Mahsa's argument, the trial court neither erred nor refused to charge its request no. 10. Mahsa's requested charge stated, "[t]he provisions against the waiver of contractual rights, unless authorization of changes are in writing or signed, can also be waived." The trial court agreed to give that charge and did so, charging: "the provisions against the waiver of contractual rights in this lease, unless alterations or changes are in writing and signed, can also be waived." There was no error.

4. Mahsa contends that the trial court erred by failing to grant its motions for j.n.o.v. and for a new trial. Mahsa argues "the errors by the court did affect the findings by the jury."

"A j.n.o.v. is required where there is no conflict in the evidence as to any material issues and the evidence introduced (construed in favor of the nonmovant) demands a particular verdict. Thus, the standard of appellate review of a trial court's denial of a motion for j.n.o.v. is the any evidence test." (Citation and punctuation omitted.) *Morrison Homes of Florida v. Wade*, 266 Ga. App. 598, 599 (598 SE2d 358) (2004). For that reason, when there is some evidence to support the verdict, the denial of a defendant's motion for j.n.o.v. will not be disturbed. *John Crane, Inc. v. Highsmith*, 271 Ga. App. 13, 15 (3) (608 SE2d 690) (2004). Similarly, a motion for new trial is properly denied when there is any evidence to authorize the trial court's ruling. See *Carson v. Carson*, 277 Ga. 335, 336 (1) (588 SE2d 735) (2003). Because the record contains evidence to support the verdict for Al-Madinah and the contrary evidence did not demand a verdict for Mahsa, the trial court did not err in denying the motion for new trial. See id. Similarly, inasmuch as the judgment has evidentiary support, the denial of Mahsa's motion for j.n.o.v. was not error. See *Highsmith*, supra.

*Judgment affirmed. Smith, P. J., and Ellington, J., concur.*

DECIDED NOVEMBER 21, 2005 —
RECONSIDERATION DENIED DECEMBER 15, 2005 — ■

*David C. Farshy*, for appellants.
*Higgins & Dubner, Michael W. Higgins*, for appellees.