In the Supreme Court of Georgia

Decided:    February 22, 2016

S15A1611.   AYERS et al. v.  COOK et al.

HINES, Presiding Justice.

Caveators James A. Ayers, Nancy Davis, and Debra Hilty ("Caveators"), siblings of testator Donald Ayers ("Donald"), appeal from the judgment of the superior court, entered after a jury verdict, upholding Donald's last will and testament that left the entirety of his estate to Donald's remaining sibling, Carol Ayers ("Carol").  For the reasons that follow, we affirm.

Construed to support the verdict, the evidence showed that Donald was divorced with no children, and his four siblings were his closest relatives, but discord between the siblings had developed during the last years of the life of their mother.  For three years preceding the execution of the will, Carol lived 50 miles from Donald and often accompanied him to medical appointments and on errands; she visited him weekly, they spoke on the phone regularly, and she sometimes wrote checks for him from a joint account.  Donald had no will prior to April 2009.  After a discussion about Donald's wishes for his property after

his death, Carol, using a form she found on the internet, prepared a will for Donald which she gave him to review on April 15, 2009; it left the entirety of his estate to Carol and named her as executor, and in the event she predeceased him, named Carol's daughter, Tammy Cook ("Tammy"), as beneficiary and executor. Donald said that the will reflected exactly what he wished to do and that same day, with Carol as a passenger, Donald drove to the Meriwether County courthouse. There, two deputy clerks of the superior court witnessed the will's execution; after being informed that the will did not need to be filed with the court, Donald and Carol left, taking the will with them. In sworn interrogatory answers, both witnesses stated that, at the time Donald executed the will on April 15, 2009, he acknowledged that the document he was signing was his will, and that he appeared to be acting voluntarily in signing it, and to be of sound and disposing mind.

Donald died on January 17, 2012. Carol filed the will for probate, and Caveators asserted that at the time of the will's execution, Donald was laboring under the exercise of undue influence by Carol and Tammy (together "Propounders"). The will was admitted to probate and Caveators appealed to the superior court. A jury trial was held, the jury found the will to be valid, and

2

the court entered judgment accordingly.

1. Caveators enumerate as error that the trial court improperly excluded evidence related to the issue of undue influence. However, they do not cite any evidence proffered to the court that was rejected, and do not attempt to put before this Court what evidence they might have introduced. Rather, they address an incident that happened during the opening statement of counsel for Caveators when he stated that, should the jury find the will invalid, "Carol Ayers will still get one-fourth of all the assets. That's the law." Propounders objected, and in a bench conference, moved for a mistrial, stating that it was improper to discuss the disposition of the estate. When asked if he wished to respond, counsel for Caveators stated: "No, it's admissible." The court acquiesced to the suggestion that the parties research the issue during the lunch break, declared that it would address the matter later, and counsel for Caveators proceeded with his opening statement.

At the end of the lunch break, the court stated that faced with an improper comment from counsel, it would have to give a jury instruction, and that how the estate would be divided if the will was invalid was not a relevant issue to the matters being tried. Counsel for Propounders again moved for a mistrial, and

counsel for Caveators stated that any instruction regarding an improper statement was unnecessary because the court had already informed the jury that the statements of counsel were not evidence, and counsel cited case law for the proposition that evidence of the value of the estate, and how property came into it, could be relevant to the reasonableness of the testator's disposition. However, counsel did not then articulate any reason why such issues would be relevant in the trial of this case, does not do so now, and none is apparent from the evidence at trial. While issues relevant to the question of undue influence certainly "may be supported by a wide range of testimony," *Dyer v. Souther*, 272 Ga. 263, 265 (2) (528 SE2d 242) (2000) (Citation and punctuation omitted), that does not render matters relevant in a particular undue influence case relevant in any and all other undue influence cases. See *Johnson v. Burrell*, 294 Ga. 301, 304 (2) (751 SE2d 301) (2013). As Caveators did not show in the trial court why the disposition of Donald's property in the event the will was found invalid would be relevant to this case, they cannot attempt to make such showing now. *Williams v. State*, 293 Ga. 750, 753 (3) (749 SE2d 693) (2013). Accordingly, the trial court did not err in informing the jury that it was "highly improper" for counsel for Caveators to attempt to inform the jury as to what

4

would happen to Donald's property if the jury invalidated the will. See *Morrison v. Morrison*, 282 Ga. 866, 867(1), (655 SE2d 571) (2008); *Mitchell v. State*, 271 Ga. 242, 243-244 (4) (516 SE2d 782) (1999).

2. During the discussion of the opening statement of Caveators, see Division 1, supra, the trial court announced its intention to instruct the jury to put aside counsel's statement and to "explain to [the jury] what this trial is about"; Caveators did not object. In addition to instructing the jury not to heed counsel's statement regarding the disposition of Donald's property in the event the will was found to be invalid, the court instructed the jury on the concepts of the testator's freedom of volition and undue influence, and that these were matters for the jury's determination; the court also stated that the influence necessary to invalidate the will would be such that Carol

> just is really controlling [Donald's] thoughts and what he does. The fact that she may help him – be helping him in different ways is not sufficient, okay. It is – it's the – it is the – this kind of extraordinary control. So it's dangerous for me to give you that interpretation.

A bench conference ensued in which counsel for Caveators questioned whether that was a correct statement of law and asserted that matters such as whether Carol wrote checks for the decedent, drove him to medical appointments, or

5

helped in his home were relevant for the jury's consideration, that there was no support in case law for an instruction regarding "extraordinary control," and that the jury could consider a wide range of evidence under an appropriate instruction. At the close of the bench conference, the court instructed the jury:

> I told you what I was doing was kind of dangerous, but at the end of this case I am going to charge you exactly what the law is, and that will override anything I've said in this case if I have misstated the law in any way, and the only thing I know of that could've been misstated was those last few off-the-cuff remarks that I made, and I'm not telling y'all which way to rule in this case. That's y'all's decision.

In the court's final instructions, it charged the jury on the law of undue influence, and Caveators do not assert that those instructions were erroneous.

Caveators assert that the trial court's instruction that included reference to "extraordinary control" was reversible error. However, it is axiomatic that jury instructions must be considered as a whole when determining if there is reversible error. *Lee v. Swain*, 291 Ga. 799, (2) (a) (733 SE2d 726) (2012). The court was clear that the jury was not to base its decision on the court's earlier remarks regarding "extraordinary control," but rather on the court's final instructions, and essentially repudiated its reference to "extraordinary control." See *Akin v. Patton*, 235 Ga. 51, 52 (218 SE2d 802) (1975); *Executive Committee*

6

*of the Baptist Convention v. Ferguson*, 213 Ga. 441, 443 (1) (99 SE2d 150) (1957). Read as a whole, the court's instructions to the jury were sufficiently clear and did not mislead it. See *Arrington v. Collins*, 290 Ga. 603, 607 (2) (724 SE2d 372) (2012).

3. Finally, Caveators contend that the trial court erred in making "extraneous comments throughout the trial" that confused the jury. Many of the comments complained of have been addressed above, see Divisions 1 and 2, supra, or were not objected to at trial by Caveators.[1] See *Francis v. Francis*, 279 Ga. 248, 248–249 (611 SE2d 45) (2005). The Caveators did object to the trial court's charging the jury that "[a] will is a very simple document. It doesn't have to be initialed on every page, it doesn't have to be notarized, it doesn't have to go through a lot of formalities that lawyers do go through, so I want you to understand that in listening to this." Although Caveators mentioned in their objection to the final jury charge the court's reference to a will as a "simple

---

[1] In fact, during closing argument, Propounders mentioned Donald's level of mental competency, and Caveators asked to approach the bench. There, Caveators objected that the issue before the jury was only undue influence and not whether Donald was competent to make a will. The trial court then instructed the jury that such was the case and that the only issue related to competency raised in the case was Donald's mental state "such that it would make him subject to undue influence"; rather than object to what Caveators now contend was a misleading instruction, they thanked the trial court for giving it.

document," they did so only in the context of complaining that the court had not ordered its instructions in the manner Caveators understood it would, an argument they do not repeat in this Court. See *Williams*, supra. Rather, in this Court they assert that error exists because the trial court's use of the phrase "a very simple document" echoed the closing argument of the Propounders that this was "really a simple case," and that short wills were to be preferred.[2] To the extent that Caveators' objection below encompassed this issue, id., it does not show a violation of OCGA § 9-10-7[3] as Caveators assert. Assuming that an objection under that Code section was preserved for appellate review, see *Mahsa, Inc. v. Al–Madinah Petroleum, Inc.*, 276 Ga. App. 890, 894 (2) (a) (625 SE2d 37) (2005), the charge did not express an opinion as to what had been proved, or endorse the Propounders' view of the case, but rather was directed to instructing the jury regarding the formalities of a valid will. See *Separk v.*

---

[2] The will at issue was two pages long.

[3] OCGA § 9-10-7 reads:

It is error for any judge, during the progress of any case, or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved. Should any judge violate this Code section, the violation shall be held by the Supreme Court or Court of Appeals to be error, the decision in the case shall be reversed, and a new trial shall be granted in the court below with such directions as the Supreme Court or the Court of Appeals may lawfully give.

*Caswell Builders*, 209 Ga. App. 713, 714-715 (4) (434 SE2d 713) (1993).

Further, the court instructed the jury that nothing that it had said or done during the trial should be interpreted as intimating, hinting, or suggesting how the case should be decided, see *Cline v. Lee*, 260 Ga. App. 164, 171(3) (581 SE2d 558) (2003), and there is no error.

Judgment affirmed. All the Justices concur.