[Nos. 57543-1-I; 57649-6-I.   Division One.   July 23, 2007.]

JACOB'S MEADOW OWNERS ASSOCIATION, *Plaintiff*, v. PLATEAU 44 II, LLC, ET AL., *Defendants*, SSB, LLC, *Respondent*, ALPINE INDUSTRIES, INC., ET AL., *Defendants*, S.C. VISIONS, INC., *Appellant*.

744

746

748

*Eileen McKillop* (of *Oles Morrison Rinker & Baker, LLP*) and *Terry J. Price* and *Earl M. Sutherland* (of *Reed McClure*), for appellant.

*Heather S. Cohen* (of *Marderosian Runyon Cercone Lehman Armo*) and *Stephen M. Todd* and *Sommer B. Dykema* (of *Todd & Wakefield*), for respondent.

¶1   DWYER, J. — SSB, LLC, was the general contractor on the construction of the Jacob's Meadow Condominiums in Issaquah. S.C. Visions, Inc., a subcontractor on the construction project, was responsible for the installation of vinyl siding. After the developer of the condominiums sued SSB for damages caused by construction defects, SSB filed a complaint against S.C. Visions asserting claims for breach of contract and contractual indemnity. The trial court granted partial summary judgment to S.C. Visions, dismissing SSB's breach of contract claim. After trial, the jury found that S.C. Visions had a contractual duty to indemnify SSB for a portion of the settlement payment made to the developer on SSB's behalf, and the trial court entered judgment awarding SSB that amount. SSB then moved for an award of attorney fees and costs. The trial court awarded SSB the attorney fees and costs it incurred both in litigating its claim against S.C. Visions and in defending against the developer's claim.

¶2   S.C. Visions appeals, contending on several bases that the trial court erred both by entering judgment in favor of SSB and by awarding SSB attorney fees and costs. SSB cross-appeals, contending that the trial court erred by dismissing its breach of contract claim on summary judgment.

¶3   We hold that the trial court erred both by dismissing SSB's breach of contract claim and by awarding SSB those attorney fees incurred in defending against the developer's claim. Accordingly, we reverse and remand this matter to the trial court for further proceedings consistent with this opinion. We affirm the decisions of the trial court and the

judgment entered on the jury's verdict in all other challenged respects.

## FACTS

¶4 SSB was the general contractor on the construction of the Jacob's Meadow Condominiums in Issaquah. S.C. Visions was the subcontractor responsible for the installation of vinyl siding. Construction was completed in 2001. In April 2004, S.C. Visions was administratively dissolved by the secretary of state. In June 2004, the Jacob's Meadow Owners Association filed a complaint against the developer of the condominiums, alleging numerous construction defects. The developer then filed a complaint against SSB. In December 2004, SSB filed a complaint against 10 subcontractors, including S.C. Visions, asserting claims for breach of contract and contractual indemnity. Eventually, the developer settled with both the Jacob's Meadow Owners Association and SSB. SSB's settlement payment to the developer was made by SSB's insurer, Ohio Casualty Insurance Company. SSB subsequently settled with all subcontractors against which it had filed suit except S.C. Visions.

¶5 Before trial, S.C. Visions filed a motion for summary judgment seeking dismissal of SSB's breach of contract claim, asserting that SSB was unable to establish that it suffered damages sufficient to support the claim. The trial court granted the motion. SSB filed two subsequent motions for reconsideration, both of which were denied by the trial court. S.C. Visions also filed a motion for summary judgment contending that its corporate dissolution barred SSB's claims. The trial court denied this motion. S.C. Visions filed additional motions to exclude the testimony of Stacey Grund, an expert witness for SSB, and to exclude evidence of the indemnity claim. The trial court denied both motions.

¶6 Trial commenced on November 14, 2005. At the conclusion of SSB's case, S.C. Visions moved for judgment as a matter of law, contending that SSB lacked standing to seek

indemnity from S.C. Visions for a portion of the settlement paid by SSB's insurer and arguing that SSB had not offered evidence sufficient to prove that a written contract containing an indemnity provision existed between the parties. The trial court denied the motion.

¶7 In December 2005, the jury returned a verdict finding that S.C. Visions had a written contract with SSB that included an agreement by S.C. Visions to indemnify SSB. The jury further found that SSB was entitled to $779,392 pursuant to that agreement, representing a portion of the settlement paid by Ohio Casualty on SSB's behalf.

¶8 S.C. Visions then filed a motion for judgment notwithstanding the verdict, again arguing that SSB did not have standing to seek indemnification for a portion of the settlement amount. The trial court denied the motion.

¶9 After the verdict was rendered, SSB filed a petition for an award of attorney fees and costs. The trial court awarded SSB $328,651.32 in attorney fees and costs, representing the fees and costs incurred by SSB in litigating its claim against S.C. Visions as well as the fees and costs incurred by SSB in defending against the claim of the developer. The trial court then entered an amended judgment in favor of SSB in the amount of $1,108,043.32.

¶10 Both parties now seek relief on appeal. We hold that the trial court erred by dismissing SSB's breach of contract claim. The record contains evidence sufficient to demonstrate the existence of a genuine issue of material fact regarding damages suffered by SSB as a result of S.C. Visions' alleged breach of contract. Such evidence was, therefore, sufficient to overcome S.C. Visions' motion for summary judgment. We further hold that the trial court erred by awarding SSB the attorney fees it incurred in defending against the developer's claim. Such fees are an element of the damages to which SSB is entitled pursuant to S.C. Visions' duty to indemnify SSB, the measure of which must be determined by the trier of fact, in this case the jury. Accordingly, we reverse and remand this matter to

the trial court for proceedings consistent with this opinion. We affirm the decisions of the trial court and the judgment entered on the jury's verdict in all other challenged respects.

## DISCUSSION

### Summary Judgment—Breach of Contract Claim

■ ¶11 SSB contends that the trial court erred by dismissing its breach of contract claim, asserting that the evidence presented to and considered by the trial court on SSB's motion for reconsideration was sufficient to demonstrate the existence of a disputed issue of material fact and, therefore, to overcome S.C. Visions' motion for summary judgment. We agree.[1]

¶12 The facts relevant to our resolution of this issue are as follows. S.C. Visions' motion for summary judgment asserted that SSB could not establish that it suffered damages sufficient to support its breach of contract claim. SSB's response to the motion asserted that "there is presently sufficient evidence in the record establishing SC Visions' breach of contract." SSB, however, neither indicated specifically what damages were suffered as a result of the alleged breach nor provided any evidence of the dam-

---

[1] We review de novo an order on summary judgment and engage in the same inquiry as the trial court. *Marincovich v. Tarabochia*, 114 Wn.2d 271, 274, 787 P.2d 562 (1990). Summary judgment is properly granted when the pleadings, affidavits, depositions, and admissions on file demonstrate that there is no genuine issue of material fact and that the moving party is entitled to summary judgment as a matter of law. CR 56(c); *Hutchins v. 1001 Fourth Ave. Assocs.*, 116 Wn.2d 217, 220, 802 P.2d 1360 (1991). The moving party bears the initial burden of establishing its right to judgment as a matter of law. Once the moving party satisfies its initial burden, the burden then shifts to the nonmoving party to show that a triable issue exists. *Doherty v. Mun. of Metro. Seattle*, 83 Wn. App. 464, 468, 921 P.2d 1098 (1996). All reasonable inferences from the evidence must be construed in favor of the nonmoving party. *Lamon v. McDonnell Douglas Corp.*, 91 Wn.2d 345, 349, 588 P.2d 1346 (1979).

A ruling on a motion for reconsideration is within the discretion of the trial court and is reversible only for a manifest abuse of discretion. *Coggle v. Snow*, 56 Wn. App. 499, 504, 784 P.2d 554 (1990). A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

ages suffered. Accordingly, the trial court granted the motion for summary judgment, thereby dismissing SSB's breach of contract claim.

¶13 SSB then filed a motion for reconsideration pursuant to CR 59.[2] Therein, SSB asserted that S.C. Visions had breached a provision in a written agreement between the parties which obligated S.C. Visions to install the vinyl siding "in accordance with applicable codes and ordinances." SSB further asserted that it had incurred damages as a result of S.C. Visions' breach, representing that portion of the settlement amount paid on behalf of SSB to the developer for the removal and replacement of the vinyl siding installed by S.C. Visions.

¶14 In conjunction with the motion for reconsideration, SSB submitted declarations by two experts asserting that S.C. Visions' work was not in compliance with building codes, as required by the cited provision in the agreement between the parties, and that SSB was damaged in an amount representing the cost of removing and replacing the vinyl siding. SSB also submitted a declaration by its counsel asserting that SSB had made a settlement payment to the developer representing, in part, the replacement cost of the vinyl siding. Attached to those declarations were the settlement agreement entered into between the developer and SSB, the cost estimate for the repair of the vinyl siding, and the agreement containing the provision alleged to have been breached by S.C. Visions.

¶15 The trial court denied SSB's motion for reconsideration, again stating that SSB had not provided evidence of

---

[2] The provisions of CR 59(a) relied upon by SSB iterate circumstances where cause for reconsideration exists:

(4) Newly discovered evidence, material for the party making the application, which he could not with reasonable diligence have discovered and produced at the trial;

. . . .

(7) That there is no evidence or reasonable inference from the evidence to justify the verdict or the decision, or that it is contrary to law;

. . . .

(9) That substantial justice has not been done.

damages sufficient to survive a motion for summary judgment. The trial court did not indicate whether it had considered the additional documentary evidence submitted by SSB in reaching its determination.

¶16 SSB then filed another motion for reconsideration, asserting that the evidence submitted in conjunction with the first motion for reconsideration was sufficient to overcome S.C. Visions' motion for summary judgment.

¶17 The trial court again denied the motion for consideration. In so doing, the trial court specifically stated that it had considered the declarations proffered by SSB in support of its initial motion for reconsideration.

¶18 As a preliminary matter, SSB asserts that the trial court erred as a matter of law by requiring SSB to demonstrate that it was economically damaged by the alleged breach of contract in order to survive S.C. Visions' motion for summary judgment.

¶19 It is true that, as a general rule, every breach of contract gives rise to a cause of action, even when the aggrieved party has not suffered any actual damage. *Ford v. Trendwest Resorts, Inc.*, 146 Wn.2d 146, 158, 43 P.3d 1223 (2002) (quoting *Gilmartin v. Stevens Inv. Co.*, 43 Wn.2d 289, 294, 261 P.2d 73, 266 P.2d 800 (1953)). However, in suits for damages only, such as that here, a court may dismiss a breach of contract action if damages have not been suffered. *Ketchum v. Albertson Bulb Gardens, Inc.*, 142 Wash. 134, 139, 252 P. 523 (1927); *see, e.g., Wilkerson v. Wegner*, 58 Wn. App. 404, 409-10, 793 P.2d 983 (1990). Accordingly, the trial court did not err by requiring SSB to demonstrate that it incurred damage as a result of S.C. Visions' alleged breach of contract in order to overcome S.C. Visions' motion for summary judgment.

¶20 Before we address the merits of the trial court's determination that SSB was unable to sustain that burden, we must first determine the content of the record on review. It is our task to review a ruling on a motion for summary judgment based on the precise record considered by the

trial court. *Wash. Fed'n of State Employees v. Office of Fin. Mgmt.*, 121 Wn.2d 152, 163, 849 P.2d 1201 (1993); *Green v. Normandy Park Riviera Section Cmty. Club*, 137 Wn. App. 665, 678, 151 P.3d 1038 (2007). That record includes those documents designated in an order granting summary judgment and any supplemental order of the trial court. RAP 9.12. Accordingly, if a supplemental order of the trial court indicates that it considered certain evidentiary submissions in reaching its determination, those items designated in the trial court's order are part of the record upon which we base our review. *See Noble Manor Co. v. Pierce County*, 133 Wn.2d 269, 284 n.9, 943 P.2d 1378 (1997); *Tanner Elec. Coop. v. Puget Sound Power & Light*, 128 Wn.2d 656, 675 n.6, 911 P.2d 1301 (1996). In ruling on SSB's second motion for reconsideration, the trial court specifically noted that it had considered the evidence proffered by SSB in conjunction with its first motion for reconsideration. Accordingly, those evidentiary submissions constitute a part of the record upon which we now base our review. RAP 9.12; *Tanner Elec. Coop.*, 128 Wn.2d at 675 n.6.

¶21 S.C. Visions now contends, however, that such evidence was not newly discovered and, therefore, should not have been considered by the trial court. *See* CR 59(a)(4); *Richter v. Trimberger*, 50 Wn. App. 780, 785, 750 P.2d 1279 (1988) ("[T]he trial court could not on reconsideration consider new evidence that could have been discovered prior to the trial court's ruling.").

¶22 Where a party believes that proffered evidence is not properly before the trial court, it must move the trial court to strike such evidence from the record. Upon obtaining an unfavorable ruling from the trial court, error may be assigned thereto on appeal. Furthermore, if a party believes that a trial court decision relating to the content of the record is in error, it may object to that decision by motion in this court. RAP 9.13. Here, S.C. Visions filed neither a motion to strike the evidence in the trial court on the basis that such evidence was not newly discovered nor a RAP 9.13 motion in this court.

¶23 Where the trial court does not strike evidence based on its untimely submittal, we will not strike such evidence on our own initiative. It is our duty to review evidentiary rulings made by the trial court; we do not ourselves make evidentiary rulings. Similarly, it is our duty to review a trial court's ruling on summary judgment on the record actually before the trial court. *Wash. Fed'n of State Employees*, 121 Wn.2d at 163. Thus, because the evidence proffered by SSB in conjunction with its first motion for reconsideration was considered by the trial court, and because the trial court made no ruling on the admissibility of this evidence to which any error has been assigned, the evidence constitutes part of the record before the trial court in ruling on the motion and is, consequently, properly before this court as well.

¶24 That evidence is sufficient to demonstrate the existence of a genuine issue of material fact regarding whether damages were suffered as a result of S.C. Visions' alleged breach of contract. The declarations and documentary evidence proffered by SSB indicate that a settlement payment was made to the developer on SSB's behalf, that a portion of that settlement amount was necessitated by work performed by S.C. Visions, and that such work was not in compliance with building codes, as was required by the agreement between the parties.

¶25 S.C. Visions contends, nonetheless, that the trial court was correct in dismissing SSB's breach of contract claim on summary judgment because any damages suffered as a result of the alleged breach of contract were duplicative of those amounts sought pursuant to the indemnity claim. This contention is unavailing.

¶26 It is well established that multiple claims may be made in a single lawsuit. CR 8(e)(2) provides:

A party may set forth two or more statements of a claim or defense alternately or hypothetically, either in one count or defense or in separate counts or defenses. . . . A party may also state as many separate claims or defenses as he has regardless

of consistency and whether based on legal or on equitable grounds or on both.

■ ¶27 Furthermore, a plaintiff may bring separate or alternative claims seeking compensation for the same damages or amounts, such as the breach of contract and indemnity claims at issue here, provided different evidence is available to prove each of the claims. *See, e.g., U.S. Oil & Ref. Co. v. Lee & Eastes Tank Lines, Inc.*, 104 Wn. App. 823, 829, 16 P.3d 1278 (2001) (seeking compensation for settlement payment to third party and expenses of litigation with third party, pursuant to both breach of contract and indemnity claims).

■ ¶28 Here, different evidence is relevant to prove SSB's breach of contract and indemnity claims.[3] Furthermore, the breach of contract claim was based on an entirely different provision of the agreement between the parties than was the indemnity claim. SSB was not required to rely on only one contract provision in pursuing its action against S.C. Visions.

¶29 The trial court erred by dismissing SSB's claim on summary judgment. Accordingly, we reverse and remand this matter to the trial court for further proceedings consistent with this opinion.

### Attorney Fee Award

¶30 S.C. Visions contends that the trial court erred by awarding attorney fees to SSB in an amount constituting

---

[3] In order to prove an indemnity claim, a plaintiff must demonstrate that there exists a contract containing an indemnity provision that binds the defendant to reimburse the plaintiff for the amount claimed. *See Stocker v. Shell Oil Co.*, 105 Wn.2d 546, 549, 716 P.2d 306 (1986) ("Indemnity agreements are essentially agreements for contractual contribution, whereby one tortfeasor, against whom damages in favor of an injured party have been assessed, may look to another for reimbursement.").

In order to prove a breach of contract claim, on the other hand, a plaintiff must demonstrate that there exists a contract imposing a duty on the defendant, and that the defendant failed to fully perform that duty. *See* RESTATEMENT (SECOND) OF CONTRACTS § 235(b) (1979) (breach of contract). The plaintiff must also prove that the amount of damages claimed is necessary to place the plaintiff in the position it would have occupied had the duty been fulfilled. *Rathke v. Roberts*, 33 Wn.2d 858, 865, 207 P.2d 716 (1949) (measure of damages).

both the fees incurred by SSB in litigating its claim against S.C. Visions and the fees SSB incurred in defending against the developer's claim. Insofar as the trial court's award included amounts incurred by SSB in defending against the developer's claim, we agree.

A. *Attorney Fees Incurred in Defending against Developer's Claim*

¶31 In awarding those attorney fees incurred by SSB in defending against the developer's claim, the trial court relied on the indemnity provision contained in the agreement between the parties,[4] which states:

> Subcontractor's duty to defend, indemnify, and hold Contractor harmless shall include . . . Contractor's personnel-related costs, *reasonable attorneys' fees*, court costs and all other claim-related expenses.

(Emphasis added.)

¶32 S.C. Visions contends that the trial court erred by awarding attorney fees to SSB pursuant to that indemnification provision, asserting that any such fees were damages arising from its breach of the duty to indemnify. As such, S.C. Visions contends, the measure of those attorney fees should have been determined by the jury, the fact finder in this case. We agree.

¶33 In order to resolve this issue, we must discuss the distinction between attorney fees awardable as costs of maintaining or defending an action against an adverse party and attorney fees recoverable as damages, generally incurred as a result of prior actions by the adverse party which have exposed the claimant to litigation with a third party. *See, e.g., Bowers v. Transamerica Title Ins. Co*, 100 Wn.2d 581, 593-602, 675 P.2d 193 (1983) (attorney fees as costs); *Flint v. Hart*, 82 Wn. App. 209, 223-24, 917 P.2d 590 (1996) (attorney fees as damages).

---

[4] Whether a contractual provision authorizes an award of attorney fees is a legal question. *Tradewell Group, Inc. v. Mavis*, 71 Wn. App. 120, 126, 857 P.2d 1053 (1993). We review questions of law de novo. *Hanson v. City of Snohomish,* 121 Wn.2d 552, 556, 852 P.2d 295 (1993).

¶34 The case law regarding attorney fees awardable as costs of an action is well developed. When authorized, the determination of a reasonable attorney fee award is a matter within the discretion of the trial court. *Boeing Co. v. Sierracin Corp.*, 108 Wn.2d 38, 65, 738 P.2d 665 (1987). A party is not, therefore, entitled to have such a determination made by a jury. *In re Marriage of Firchau*, 88 Wn.2d 109, 114-15, 558 P.2d 194 (1977). A trial court abuses its discretion only when its ruling is manifestly unreasonable or when its discretion is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).[5]

¶35 The case law regarding attorney fees recoverable as damages is significantly less well developed. In the majority of cases which have discussed attorney fee damage recoveries, such recoveries have been based on principles of equitable indemnity:

> [W]hen the natural and proximate consequences of a wrongful act by defendant involve plaintiff in litigation with others, there may, as a general rule, be a *recovery of damages* for the reasonable expenses incurred in the litigation, *including compensation for attorney's fees*.

*Wells v. Aetna Ins. Co.*, 60 Wn.2d 880, 882, 376 P.2d 644 (1962) (emphasis added); *Manning v. Loidhamer*, 13 Wn. App. 766, 769-74, 538 P.2d 136 (1975); *see also Tri-M Erectors, Inc. v. Donald M. Drake Co.*, 27 Wn. App. 529, 531, 618 P.2d 1341 (1980) (noting that attorney fees incurred in defending suit against third party were recoverable pursuant to contractual indemnity provision as damages, the measure of which was determined by the jury). Pursuant to

---

[5] Trial courts determine a reasonable attorney fee award by calculating a lodestar figure, which is the market value of the attorney's services calculated by multiplying the hours reasonably expended in the litigation by a reasonable rate of compensation. *Bowers*, 100 Wn.2d at 593; *Perry v. Costco Wholesale, Inc.*, 123 Wn. App. 783, 808, 98 P.3d 1264 (2004). After determining the lodestar figure, the amount may be adjusted to reflect factors such as the contingent nature or quality of the representation. *Perry*, 123 Wn. App. at 808 (citing *Bowers*, 100 Wn.2d at 598-99).

this rule, such attorney fees are considered to be damages rather than costs.[6]

¶36 Attorney fees recoverable pursuant to a contractual indemnity provision are an element of damages rather than costs of suit. As with attorney fees recoverable pursuant to the equitable indemnity doctrine, the attorney fee recovery provided for in the indemnification provision at issue herein references attorney fees incurred as a result of actions by S.C. Visions that caused SSB to become involved in litigation with the developer. Accordingly, such fees represent damages flowing from the breaching party's (S.C. Visions) actions rather than costs incurred by SSB as a result of maintaining its subsequent action against S.C. Visions.

¶37 As an element of damages, the measure of the recovery of attorney fees pursuant to the indemnification provision must be determined by the trier of fact. When trial is to a jury, therefore, the measure of such damages is a jury question.

¶38 The right to a jury trial is provided for by article I, section 21 of the Washington Constitution. *See also* CR 38(a). A party has a constitutional right to a jury determination of the amount of damages to which the plaintiff is entitled. *Sofie v. Fibreboard Corp.*, 112 Wn.2d 636, 645-46, 771 P.2d 711, 780 P.2d 260 (1989); *see also James v. Robeck*, 79 Wn.2d 864, 869, 490 P.2d 878 (1971) ("To the jury is consigned under the constitution the ultimate power to weigh the evidence and determine the facts—and the amount of damages in a particular case is an ultimate fact."). Thus, if trial is to a jury, the determination of the amount of damages to which the plaintiff is entitled is

---

[6] Considering such attorney fees to be an element of damages rather than costs is the approach of the majority of courts in other jurisdictions. *See, e.g., Taylor v. S. Pac. Transp. Co.*, 130 Ariz. 516, 523, 637 P.2d 726 (1981); *Elijah v. Fender*, 674 P.2d 946, 951 (Colo. 1984); *Auxier v. Kraisel*, 466 A.2d 416, 420 (D.C. 1983); *Kimmel v. Iowa Realty Co.*, 339 N.W.2d 374, 380 (Iowa 1983); *State Farm Mut. Auto. Ins. Co. v. Allen*, 50 Mich. App. 71, 78-79, 212 N.W.2d 821 (1973); *Tetherow v. Wolfe*, 223 Neb. 631, 637-38, 392 N.W.2d 374 (1986); *Griffin v. Bredouw*, 420 P.2d 546, 549 (Okla. 1966); *Lesikar v. Rappeport*, 33 S.W.3d 282, 306 (Tex. App. 2000); *Cedarburg Light & Water Comm'n v. Glens Falls Ins. Co.*, 42 Wis.2d 120, 124-25, 166 N.W.2d 165 (1969).

within the jury's province. *Palmer v. Jensen*, 132 Wn.2d 193, 197, 937 P.2d 597 (1997).

¶39 Consistent with these principles, courts in other jurisdictions have held that, when attorney fees are recoverable as an element of damages, the measure of such attorney fees must be determined by the jury. *See, e.g., Lesikar v. Rappeport*, 33 S.W.3d 282, 306-08 (Tex. App. 2000); *Olds v. Hosford*, 354 P.2d 947, 953-55 (Wyo. 1960); *see also Am. Med. Transp. Group, Inc. v. Glo-An, Inc.*, 235 Ga. App. 464, 466-67, 509 S.E.2d 738 (1998).[7] Our constitution's guaranty of the right to a jury determination of the measure of damages compels our conclusion that this is the rule in Washington as well.

¶40 While it is true that a determination of a reasonable attorney fee is often a complex question, that consideration alone is not sufficient to remove the question from the jury's purview. *Gatudy v. Acme Constr. Co.*, 196 Wash. 562, 569, 83 P.2d 889 (1938) ("The mere fact that the evidence may present complicated questions of fact, or even questions involving figures difficult to carry in the mind, is not a sufficient reason for the denial of a trial by jury."); *see also Watkins v. Siler Logging Co.*, 9 Wn.2d 703, 712, 116 P.2d 315 (1941) ("Even though it may be admitted that a court may be better able than a jury to deal intelligently with matters which are multifarious, . . . standing alone, such a situation will not require that a party yield his constitutional right to a trial by jury.").

¶41 Furthermore, a jury may be aided in its consideration of this issue by the use of expert testimony. The party seeking recovery of attorney fees as damages bears the burden of presenting evidence as to the reasonableness of the amount of fees claimed. *Am. Med.*, 235 Ga. App. at 466 ("reasonableness and necessity of the expenses of litigation and attorney fees are matters for expert opinion"); *Lesikar*,

---

[7] The court in *American Medical* based its determination, in part, on a Georgia statute which provides that "the jury may allow," under particular circumstances, an award of litigation expenses as an element of damages. *Am. Med.*, 235 Ga. App. at 466; *see* GA. CODE ANN. § 13-6-11 (Supp. 2006).

33 S.W.3d at 307 ("Generally, the issue of reasonableness and necessity of attorneys' fees requires expert testimony."); *Olds*, 354 P.2d at 955 (testimony and evidence bearing upon the reasonableness of attorney fees required). Those factors bearing upon the reasonableness of attorney fees awardable as costs also bear upon the reasonableness of attorney fees recoverable as damages. Such factors have been discussed at great length in prior decisions of our Supreme Court and this court. *See, e.g., Allard v. First Interstate Bank of Wash.*, 112 Wn.2d 145, 149-51, 768 P.2d 998, 773 P.2d 420 (1989); *Bowers*, 100 Wn.2d at 593-602; *Perry v. Costco Wholesale, Inc.*, 123 Wn. App. 783, 807-09, 98 P.3d 1264 (2004).

¶42 Here, SSB failed to present to the jury evidence of those attorney fees it claimed were reasonably incurred in defending against the action brought against it by the developer, and the jury did not, therefore, make a finding regarding the proven measure of such damages. Accordingly, the trial court erred by performing a task constitutionally assigned to the jury in determining and awarding such damages to SSB.[8]

B. *Attorney Fees Incurred in Litigating Claim against S.C. Visions*

¶43 In awarding those attorney fees incurred by SSB in litigating its claim against S.C. Visions, the trial court relied on the following provision in the agreement between the parties:

> In the event either party institutes an arbitration proceeding or suit in a court against the other party . . . *in connection with*

---

[8] Because SSB failed to present to the jury evidence on the question of the amount of attorney fees it was entitled to recover as damages, it may not recover such damages. The verdict rendered by the jury herein is supported by substantial evidence in the trial record. *See McUne v. Fuqua*, 45 Wn.2d 650, 653, 277 P.2d 324 (1954) (new trial not warranted if jury's verdict is supported by evidence presented); *see also Madigan v. Teague*, 55 Wn.2d 498, 348 P.2d 403 (1960) (party waives objection to a jury instruction when the party does not propose a correct written instruction and specifically object to the instructions the party believes to be incomplete or erroneous); *Heggelund v. Nordby*, 48 Wn.2d 259, 262, 292 P.2d 1057 (1956) (a party has no right to have the jury instructed on a theory upon which there was no evidence presented at trial).

*any dispute or matter arising under this Subcontract, the prevailing party shall be entitled to recover actual attorneys fees* and all other costs incurred in arbitration or litigation, whether or not taxable under law in addition to other relief granted.

(Emphasis added.)[9]

¶44  S.C. Visions contends that the trial court erred, as a matter of law, by relying on that prevailing party provision in awarding attorney fees. Specifically, S.C. Visions contends that the jury was asked only to determine the existence of an indemnity clause, not to determine the existence of a written contract containing the prevailing party provision. The record does not support this contention. The jury was specifically asked, "Did S.C. Visions, Inc. *have a written contract* with SSB, LLC, that included a promise to indemnify SSB, LLC?" (Emphasis added.) The jury answered in the affirmative. The only evidence of a written contract presented to the jury was the written agreement containing both the indemnity provision and the separate prevailing party provision. Accordingly, it clearly was that written document upon which the jury based its determination.

¶45  The trial court did not err by relying on the prevailing party provision in awarding attorney fees to SSB, representing those fees incurred by SSB in litigating its claim against S.C. Visions.

¶46  The award of attorney fees to SSB is reversed insofar as it includes amounts constituting attorney fees incurred by SSB in defending against the developer's claim. It is otherwise affirmed.

### Motion for Summary Judgment—Indemnity Claim

¶47  S.C. Visions next contends that the trial court erred by denying its motion for summary judgment on SSB's

---

[9] Pursuant to this provision, attorney fees incurred by the prevailing party are awardable as costs of litigating the action between the parties to the agreement. Accordingly, as herein discussed, the determination of the appropriate measure of such attorney fees was a matter properly within the trial court's purview. *Boeing Co.*, 108 Wn.2d at 65.

indemnity claim. S.C. Visions asserts that the claim is barred as a matter of law because it arose after S.C. Visions' administrative dissolution. We disagree.

¶48 RCW 23B.14.340, the claim survival statute, provides:

> The dissolution of a corporation . . . shall not take away or impair any remedy available against such corporation . . . for any right or claim existing, or any liability incurred, prior to such dissolution or arising thereafter, unless the action or other proceeding thereon is not commenced within two years after the effective date of any dissolution that was effective prior to June 7, 2006, or within three years after the effective date of any dissolution that is effective on or after June 7, 2006.

As our Supreme Court held in *Ballard Square Condominium Owners Ass'n v. Dynasty Construction Co.*, 158 Wn.2d 603, 146 P.3d 914 (2006), RCW 23B.14.340 expressly provides for the survival of claims against a corporation arising after its dissolution if proceedings on those claims are brought within the time limitation specified by the statute. *Ballard Square*, 158 Wn.2d at 615-17.[10] Here, S.C. Visions was administratively dissolved in April 2004. SSB filed this action against S.C. Visions in December of that year. Thus, the action was commenced well within two years of S.C. Visions' dissolution as required by RCW 23B.14.340. Accordingly, S.C. Visions' dissolution did not bar SSB's claims against it.

¶49 The trial court did not err by denying S.C. Visions' motion for summary judgment on this issue.

---

[10] In reaching this decision, our Supreme Court relied upon the 2006 legislative amendments to this statute. *Ballard Square*, 158 Wn.2d at 615-16. The amended statute applies to actions arising before adoption of the amendments. *Ballard Square*, 158 Wn.2d at 616-17.

## Motion for Judgment as a Matter of Law

■ ¶50 S.C. Visions next contends that the trial court erred by denying its motion for judgment as a matter of law.[11]

### A. *Existence of a Contract*

¶51 S.C. Visions first asserts that SSB failed to present evidence sufficient to conclude that there was a written contract between SSB and S.C. Visions containing an agreement by S.C. Visions to indemnify SSB. We disagree.

■ ¶52 The burden of proving the existence of a contract is on the party asserting its existence. *Johnson v. Nasi*, 50 Wn.2d 87, 91, 309 P.2d 380 (1957). For a contract to exist there must be mutual assent to its essential terms. *Yakima County (W. Valley) Fire Prot. Dist. No. 12 v. City of Yakima*, 122 Wn.2d 371, 388-89, 858 P.2d 245 (1993). The existence of mutual assent may be deduced from the circumstances, *Kintz v. Read*, 28 Wn. App. 731, 735, 626 P.2d 52 (1981), including the ordinary course of dealing between the parties. *Ross v. Raymer*, 32 Wn.2d 128, 137, 201 P.2d 129 (1948). Signatures of the parties are not essential to the determination. *See Urban Dev., Inc. v. Evergreen Bldg. Prods., LLC*, 114 Wn. App. 639, 651, 59 P.3d 112 (2002) (signatures not essential elements of a written contract).

■ ¶53 Here, SSB proffered the following evidence tending to support the reasonable inference that there

---

[11] A motion for judgment as a matter of law is reviewed de novo, applying the same legal standard as the trial court. *Hill v. BCTI Income Fund-I*, 144 Wn.2d 172, 187, 23 P.3d 440 (2001). A motion for judgment as a matter of law admits the truth of the opponent's evidence and all inferences that can be reasonably drawn therefrom, and requires the evidence to be interpreted most strongly against the moving party and in the light most favorable to the opponent. *Davis v. Early Constr. Co.*, 63 Wn.2d 252, 254-55, 386 P.2d 958 (1963). Thus, the opponent must be given the benefit of every favorable inference which reasonably may be drawn from the evidence. *Arnold v. Sanstol*, 43 Wn.2d 94, 98, 260 P.2d 327 (1953). Judgment as a matter of law is proper only when the court can find, "as a matter of law, that there is neither evidence nor reasonable inference therefrom sufficient to sustain the verdict." *Hojem v. Kelly*, 93 Wn.2d 143, 145, 606 P.2d 275 (1980).

existed a written contract between the parties, containing an agreement by S.C. Visions to indemnify SSB.

¶54 SSB offered into evidence an unsigned document entitled "subcontract agreement," listing SSB as the contractor and S.C. Visions as the subcontractor. The document contains both an indemnification clause and a prevailing party clause. The document also details the siding installation to be performed by the subcontractor and states that the subcontractor is to be paid $188,280 for that work. Joe Sacotte, the principal officer of SSB, testified that the company used essentially the same contract with each of the subcontractors who worked on the Jacob's Meadow construction.

¶55 SSB also offered into evidence a bid proposal signed by Mark Snortland, the principal officer of S.C. Visions, detailing the proposed vinyl siding installation and the total proposed cost, both of which were consistent with the terms of the subcontract agreement. While Snortland testified that he did not recall seeing a written contract between S.C. Visions and SSB for the Jacob's Meadow project, he also testified that S.C. Visions would typically want a written contact for a project of that size. He further testified that S.C. Visions had entered into written contracts in the past with Sacotte and with Sacotte Construction, Inc., another entity owned by Sacotte. Snortland also testified that he signed periodic "lien release forms" during the time S.C. Visions was installing vinyl siding at the Jacob's Meadow project, whereby S.C. Visions agreed to hold SSB harmless from any liens placed on the property by S.C. Visions' suppliers.

¶56 Viewing this evidence in the light most favorable to SSB, the evidence is sufficient to create a reasonable inference that there existed a written contract between the parties containing a promise by S.C. Visions to indemnify SSB. The trial court did not err by denying S.C. Visions' motion for judgment as a matter of law on this issue.

## B. *Standing*

¶57 S.C. Visions next asserts that SSB did not have standing to seek indemnity for a portion of the settlement amount paid on SSB's behalf by Ohio Casualty Insurance Company.[12]

¶58 The portion of the settlement payment in dispute was made pursuant to an umbrella policy. The entity named as the insured on that policy was "Sacotte Construction." S.C. Visions contends that, because the policy named an entity other than SSB, Ohio Casualty was under no legal obligation to make the payment on SSB's behalf pursuant to that policy. S.C. Visions further contends that, because such payment was not made pursuant to a legal obligation, SSB had no standing to seek indemnity for it from S.C. Visions. We disagree.

¶59 Initially, as the trial court noted, an insured has standing to bring a claim against a wrongdoer, even when an insurer has paid the amount claimed. *McRory v. N. Ins. Co. of N.Y.*, 138 Wn.2d 550, 556-58, 980 P.2d 736 (1999); *Weber v. Biddle*, 72 Wn.2d 22, 28, 431 P.2d 705 (1967). The cases cited by S.C. Visions hold that an insurer may seek subrogation from an insured only when the insurer pays or discharges a debt " 'in order to protect his own rights and interests' " rather than as a " 'volunteer [or] an inter-meddler.' " *Livingston v. Shelton*, 85 Wn.2d 615, 618-19, 537 P.2d 774 (1975) (quoting *Lawyers Title Ins. Corp. v. Edmar Constr. Co.*, 294 A.2d 865, 869 (D.C. 1972)). Even assuming that this rule has some relevance to SSB's rights in relation to S.C. Visions, the record does not support S.C.

---

[12] S.C. Visions challenges both the denial of its motion for judgment as a matter of a law and its motion for judgment notwithstanding the verdict in regard to this issue. As with a motion for judgment as a matter of law, a motion for judgment notwithstanding the verdict is reviewed de novo, applying the same standard as the trial court. In determining whether to grant such a motion, the court accepts the truth of the nonmoving party's evidence and draws all reasonable inferences in its favor. The court will grant the motion only if there is no justifiable evidence upon which the jury's verdict might be sustained. *Queen City Farms, Inc. v. Cent. Nat'l Ins. Co. of Omaha*, 126 Wn.2d 50, 98, 882 P.2d 703, 891 P.2d 718 (1994) (quoting *Douglas v. Freeman*, 117 Wn.2d 242, 247, 814 P.2d 1160 (1991)).

Visions' contention that Ohio Casualty acted as a mere volunteer in making the payment on SSB's behalf.

¶60 An insurer's payment is not voluntary simply because the insurer may have a defense to coverage. To the contrary, "[i]f the insurer is subject to suit if it does not pay, . . . then it cannot be said that the payment is voluntary, or that the right to recover contribution is lost." *Clow v. Nat'l Indem. Co.*, 54 Wn.2d 198, 208, 339 P.2d 82 (1959); *see also Newcomer v. Masini*, 45 Wn. App. 284, 289, 724 P.2d 1122 (1986) ("One who settles under threat of civil suit is not a volunteer." (citing RESTATEMENT (SECOND) OF RESTITUTION § 71, at 290 (1937))).

¶61 Here, there is ample evidence in the record indicating that SSB was entitled to coverage pursuant to the umbrella policy. Initially, SSB was a named insured on the underlying primary policy.[13] Furthermore, Sacotte, the principal officer of SSB, testified that he did business under several different entity names, including SSB, "Sacotte Construction, Inc.," and "Sacotte Construction Management." He further testified that "Sacotte Construction Management" was the trade name for SSB. Thus, SSB could reasonably assert that it is the entity insured pursuant to the umbrella policy. It is foreseeable, then, that Ohio Casualty would have faced suit had it refused to cover the claim against SSB. Accordingly, S.C. Visions' assertion that Ohio Casualty acted as a "mere volunteer" in making payment pursuant to the umbrella policy is unavailing.

¶62 The trial court did not err by denying S.C. Visions' motions.

---

[13] An umbrella policy provides coverage for amounts exceeding the limits of the underlying policy and protects against gaps in the underlying policy. *Prudential Prop. & Cas. Ins. Co. v. Lawrence*, 45 Wn. App. 111, 119, 724 P.2d 418 (1986).

## Evidentiary Rulings

¶63 S.C. Visions next challenges the trial court's denial of its motions to exclude evidence of the indemnity clause and the testimony of an expert witness for SSB.[14]

### A. *Indemnity Clause*

¶64 S.C. Visions first contends that the trial court erred by denying its motion in limine to exclude evidence of the indemnity clause contained in the agreement between the parties, asserting that the indemnity clause applies only to tort claims rather than to claims that are contract-based, such as those here at issue. We disagree.

¶65 The indemnity provision contained in the agreement provides, in relevant part:

> Subcontractor agrees to defend, indemnify, and hold Contractor harmless from *any and all claims*, demands, losses and liabilities to or by third parties arising from, resulting from or connected with services performed or to be performed under this Subcontract by Subcontractor or Subcontractor's agents or employees to the fullest extent permitted by law and subject to the limitations provided below.

> Subcontractor's duty to indemnify Contractor shall *not apply to liability for damages arising out of bodily injury to persons or damage to property caused by or resulting from the sole negligence of Contractor* or Contractor's agent or employees.

> Subcontractor's duty to indemnify Contractor for *Liability for damages arising out of bodily injury to persons or damage to property* caused by or resulting from the concurrent negligence of (a) Contractor or Contractor's agents or employees, and (b) Subcontractor or Subcontractor's agents or employees, shall apply only to the extent of negligence of Subcontractor or Subcontractor's agents or employees.

---

[14] This court reviews a trial court's ruling on the admissibility of evidence for abuse of discretion. *City of Seattle v. Clark-Munoz*, 152 Wn.2d 39, 44, 93 P.3d 141 (2004). A trial court abuses its discretion only when its decision is manifestly unreasonable or exercised on untenable grounds or for untenable reasons. *Carroll*, 79 Wn.2d at 26.

(Emphasis added.) S.C. Visions contends that the inclusion of specific references to tort-based claims in the last two paragraphs of the indemnification provision indicates that the provision applies only to such tort claims, despite the reference to "any and all claims" in the provision's first paragraph.

¶66 We have previously rejected the same contention concerning an indemnity provision identical in all relevant respects to the one here at issue. *MacLean Townhomes, LLC v. Am. 1st Roofing & Builders, Inc.*, 133 Wn. App. 828, 831-35, 138 P.3d 155 (2006). In so ruling, we held that the language "any and all claims" clearly encompassed *all* claims, including those that are contract-based. *MacLean*, 133 Wn. App. at 833.

¶67 In this case, as in *MacLean*, while the indemnity provision specifically limits S.C. Visions' liability with respect to tort claims, it does not restrict those liabilities to only tort claims. *MacLean*, 133 Wn. App. at 829.[15]

¶68 The trial court did not abuse its discretion by denying S.C. Visions' motion in limine to exclude evidence of the indemnity agreement on this basis.

B. *Expert Witness Testimony*

¶69 Finally, S.C. Visions contends that the trial court abused its discretion by admitting into evidence the testimony of Stacey Grund, an expert witness for SSB.[16] We disagree.

---

[15] Citing to RCW 4.24.115, S.C. Visions also contends that interpreting the indemnity clause in such a way renders it so broad as to violate public policy. That contention fails. RCW 4.24.115 provides that an indemnity agreement is void as against public policy if it purports to indemnify the indemnitee against liability for bodily injury or damage to property caused by the negligence of the indemnitee. The indemnity provision here at issue expressly complies with that statute; the provision specifically limits S.C. Visions' duty to indemnify SSB for damages arising in tort to those damages arising as a result of S.C. Visions' own negligence. Furthermore, RCW 4.24.115 does not purport to limit the enforceability of an indemnity provision insofar as it applies to contract-based claims, the issue raised in this case.

[16] "A trial court's decisions regarding sanctions for discovery violations and admission or rejection of evidence are discretionary, and will not be disturbed on

¶70 SSB retained Grund to testify regarding the estimated cost of repairs to the vinyl siding installed by S.C. Visions. S.C. Visions deposed Grund and questioned him about those estimates. Two days before the commencement of trial, SSB provided S.C. Visions with a spreadsheet summarizing Grund's estimates. S.C. Visions then moved to exclude Grund's testimony regarding the estimates contained in the spreadsheet, asserting that such estimates differed from those provided by Grund at his deposition. In arguing its motion, S.C. Visions claimed that it was deprived of the opportunity to depose Grund regarding the estimates contained in the spreadsheet.

¶71 The trial court denied the motion but allowed S.C. Visions to conduct another one and one-half hour deposition of Grund. After conducting the subsequent deposition, S.C. Visions did not at trial object either to Grund's testimony in regard to the estimates contained in the spreadsheet or to the admission of the spreadsheet itself.

¶72 By allowing the additional deposition, the trial court ameliorated any prejudice S.C. Visions claimed to have suffered as a result of the admission of Grund's testimony regarding the revised estimates.

¶73 The trial court did not abuse its discretion by denying S.C. Visions' motion to exclude Grund's testimony.

*Attorney Fees on Appeal*

¶74 S.C. Visions requests an award of attorney fees on appeal pursuant to RAP 18.1 and the prevailing party provision of the agreement between the parties. A contractual provision supporting an award of attorney fees at trial also supports an award of attorney fees on appeal. *W. Coast Stationary Eng'rs Welfare Fund v. City of Kennewick*, 39 Wn. App. 466, 477, 694 P.2d 1101 (1985).

¶75 S.C. Visions has prevailed solely on its contention that the trial court erred by awarding to SSB those attorney

appeal absent a showing of abuse of discretion." *Henderson v. Tyrrell*, 80 Wn. App. 592, 604, 910 P.2d 522 (1996).

fees incurred by SSB in defending itself against the claim brought by the developer. S.C. Visions may apply to our commissioner for an award of those attorney fees reasonably necessary to assert its successful contention. Any fees incurred on appeal resulting from efforts expended on unsuccessful claims or arguments are not subject to award.[17]

¶76 Affirmed in part, reversed in part, and remanded.

GROSSE and AGID, JJ., concur.

---

[17] SSB did not request an award of attorney fees on appeal in its briefing. Pursuant to RAP 18.1(b), a party seeking attorney fees on appeal must devote a section of its opening brief to a request for such fees. A party who fails to comply with this procedure is not entitled to an award of attorney fees. *Denaxas v. Sandstone Court of Bellevue, LLC*, 148 Wn.2d 654, 671, 63 P.3d 125 (2003). Thus, SSB is not entitled to an award of attorney fees on appeal.