**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

|  |  |
|---|---|
| CLEAR CHANNEL OUTDOOR INC, | No. 11-35042 |
| Plaintiff - Appellant, | D.C. No. 2:10-cv-00486-RSL |
| v. | |
| PORT OF SEATTLE, | **MEMORANDUM**[*] |
| Defendant - Appellee. | |

Appeal from the United States District Court
for the Western District of Washington
Robert S. Lasnik, District Judge, Presiding

Argued and Submitted April 9, 2012
Seattle, Washington

Before: HUG, TASHIMA, and CALLAHAN, Circuit Judges.

Plaintiff-Appellant Clear Channel Outdoor, Inc. ("Clear Channel") appeals

from the district court's order granting summary judgment to Defendant-Appellee

the Port of Seattle ("the Port"). The court concluded that the parties entered into a

binding contract under which Clear Channel agreed to the early termination of

---

[*]    This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

leases for three billboards, located on properties the Port needed to acquire for a road improvement project, in exchange for $500,000. The court also concluded that, even if no contract existed, Clear Channel was estopped from repudiating its promise to terminate the leases and remove the billboards. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.[1]

We review the district court's grant of summary judgment, as well as its interpretation of state law, *de novo*. *Bravo v. City of Santa Maria*, 665 F.3d 1076, 1083 (9th Cir. 2011); *Feature Realty, Inc. v. City of Spokane*, 331 F.3d 1082, 1086 n.3 (9th Cir. 2003).

**1.** The district court correctly concluded that the parties entered into a binding contract regarding the early termination of Clear Channel's leases, as reflected in the Early Lease Termination Agreement ("ELTA") and Clear Channel's October 20, 2006, transmittal email.

Under Washington law, a contract exists if there is "a mutual intention or 'meeting of the minds' on the essential terms of the agreement." *Olson v. The Bon, Inc.*, 144 Wash. App. 627, 639, 183 P.3d 359 (2008). Mutual assent generally takes the form of an offer and acceptance. *Saluteen-Maschersky v. Countrywide*

---

[1] We restate the facts and procedural history only as necessary to explain our decision.

*Funding Corp.*, 105 Wash. App. 846, 851, 22 P.3d 804 (2001). The burden of proving a contract is on the party asserting its existence. *Id.* Washington uses the "objective manifestation theory" to determine intent, under which a court focuses "on the objective manifestations of the agreement, rather than on the unexpressed subjective intent of the parties." *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 154 Wash. 2d 493, 503, 115 P.3d 262 (2005). Washington also employs the "context rule," under which parol evidence is admissible to help interpret a contract and ascertain the parties' intent, regardless of whether the contract is ambiguous. *Berg v. Hudesman*, 115 Wash. 2d 657, 666-69, 801 P.2d 222 (1990).

In this case, the parties exchanged early termination proposals throughout 2006. During these discussions, the Port was clear that it wanted to own the properties on which Clear Channel's billboards were located, free and clear of any property interests, and Clear Channel was clear that it wanted the highest possible compensation (money or otherwise) for agreeing to terminate its leases early. The parties then met on October 12, 2006, during which Clear Channel shared a draft of the ELTA. Eight days later, Clear Channel sent a revised ELTA to the Port, saying that it "reflect[s] the terms we mutually accepted in our meeting." Those terms—$500,000 as "full and complete compensation" for early termination, permission to maintain the billboards as long as possible, and no mention of

3

relocation—plainly showed the parties' respective compromises and demonstrated a "'meeting of the minds' on the essential terms of the agreement." *Olson*, 144 Wash. App. at 639.

The parties' post-contracting actions confirm that they intended to be bound by the ELTA. Clear Channel asked the Port to defer the $500,000 payment because of tax considerations, confirmed that its understanding "remains as contained" in the ELTA, and expressed appreciation when the Port both "re-iterated" that Clear Channel could keep the billboards up for another year and cited a new appraisal that justified the parties' "previous agreement of $500K." The Port reminded Clear Channel of its rights and obligations under the ELTA and proceeded to purchase the properties containing the billboards without initiating eminent domain proceedings. Indeed, other than updating the dates for removing the billboards and making payment, the parties made no changes to, nor did anything materially inconsistent with, the ELTA for more than three years. During that time, Clear Channel made no representation that an early termination agreement had not been reached or that the ELTA was contingent on the billboards' relocation. Even viewing the record in the light most favorable to Clear Channel, the evidence shows that the parties entered into a binding contract under Washington law.

Clear Channel's arguments to the contrary lack merit. First, any dispute over what was said at the October 12, 2006, meeting is immaterial in light of the ELTA and Clear Channel's characterizations of it. *See Hearst Commc'ns*, 154 Wash. 2d at 503-04 (explaining that the existence and terms of a contract are determined by "what was written," not the parties' "unexpressed subjective intent" or "what was intended to be written"). Second, various statements by the Port that the ELTA was a "draft" agreement, that negotiations were "pending," and that "legal review" had "yet to take place" appear to refer to required administrative formalities by the Port, rather than to any unfinished negotiations to terminate the leases and relocate the billboards. Third, the Port's failure to sign the ELTA is inconsequential given that "signatures of the parties are not essential to [a] determination" of mutual assent, which "may be deduced from the circumstances." *Jacob's Meadow Owners Ass'n v. Plateau 44 II, LLC*, 139 Wash. App. 743, 765, 162 P.3d 1153 (2007); *see also* Restatement (Second) of Contracts, § 209 cmt. b. Finally, Clear Channel's subjective beliefs about whether it got a good deal are not relevant to whether the parties had a contract. *See Hearst Commc'ns*, 154 Wash. 2d at 503-04.

    **2.**    The district court properly rejected Clear Channel's alternative argument that, even if the ELTA was a binding contract, it was only part of the

parties' agreement. Clear Channel may not rely on parol evidence to prove terms not included in a partially-integrated contract where those terms are inconsistent with the written terms. *Berg*, 115 Wash. 2d at 670; *Emrich v. Connell*, 105 Wash. 2d 551, 556, 716 P.2d 863 (1986). A separate agreement to provide for the relocation of the billboards would conflict directly with the ELTA's written provision that the $500,000 "Compensation Amount" constitutes "full and complete compensation for the early termination of the leaseholds," including "any claims" for "relocation assistance and any other claims of any nature." Moreover, even if parol evidence were admissible to prove the existence of agreed-upon terms regarding relocation, there simply is no evidence of such terms.

3.      The district court correctly concluded that, even if the parties had not entered into a binding contract, Clear Channel was estopped from repudiating its assent to terminating the billboard leases early. Although the district court analyzed this issue primarily as one of promissory estoppel, we conclude that the very similar requirements for equitable estoppel are satisfied.[2]

---

[2] Equitable estoppel is used as a defense to claims against enforcement of a contract, whereas promissory estoppel more appropriately serves as a cause of action for damages. *See Humetrix, Inc. v. Gemplus S.C.A.*, 268 F.3d 910, 918 (9th Cir. 2001); *McCormick v. Lake Wash. Sch. Dist.*, 99 Wash. App. 107, 117, 992 P.2d 511 (1999). We may affirm on any basis supported by the record. *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1047 (9th Cir. 2009).

6

Equitable estoppel requires proof of "(1) an admission, act or statement inconsistent with a later claim; (2) another party's reasonable reliance on the admission, act or statement; and (3) injury to the other party which would result if the first party is allowed to contradict or repudiate the earlier admission, act or statement." *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wash. 2d 1, 14, 43 P.3d 4 (2002). These conditions are met here. First, Clear Channel's position that it never agreed to terminate the billboard leases (or at least not for only the terms set forth in the ELTA) is inconsistent with its assent to such termination in the ELTA, its October 20, 2006 email, and in a March 2007 email. Second, when Clear Channel negotiated to remove the billboards, rather than force eminent domain proceedings, the Port acquired the underlying properties and allowed Clear Channel to maintain its month-to-month leases as long as the road project would allow. Until October 2009, Clear Channel never cautioned the Port that early termination of its billboard leases was contingent on the billboards' relocation. Third, if Clear Channel were permitted to repudiate its assent to early termination, the Port would be forced to initiate eminent domain proceedings or restart negotiations to resolve the leasehold issues during or after construction activities.

The district court's judgment for Defendant-Appellee the Port of Seattle is **AFFIRMED**.

7